# DAVID JOHNSON *v.* DANIEL J. PIKE ET AL.
## (AC 32695)

DiPentima, C. J., and Gruendel and West, Js.

Argued February 1—officially released June 12, 2012

*John H. Hanks*, for the appellants (defendants).

*Wayne A. Francis*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. This appeal arises from the trial court's denial of motions for remittitur and to set aside the verdict filed by the defendants, Daniel J. Pike and Andrew C. Pike. Because the court did not abuse its discretion in concluding that the jury's award did not "shock the conscience" and is "well within the limits of a reasonable award," we affirm the judgment. The defendants also claim that the court improperly admitted certain documents into evidence. We reject this claim as well.

The plaintiff, David Johnson, brought this action seeking damages for injuries he suffered in a December 3, 2006 automobile accident involving a vehicle owned by Daniel J. Pike and driven by Andrew C. Pike.[1] The defendants admitted liability, and the case proceeded to a jury trial on the issue of damages. After finding in favor of the plaintiff, the jury awarded $34,222 in lost wages, $1762 in medical bills, no future medical

---

[1] At the time of this accident, Andrew C. Pike was a minor with a learner's permit, not a driver's license, and was supervised in the operation of the motor vehicle by Daniel J. Pike.

expenses and $50,000 in noneconomic damages.[2] The verdict totaled $85,984.

Following the verdict, the defendants filed a motion for a remittitur and a motion to set aside the verdict and for a new trial. Specifically, the defendants argued that the awards for lost wages and noneconomic damages be reduced to "a fair, just and reasonable amount . . . ." They also claimed that the court improperly admitted into evidence certain exhibits that were hearsay, self-serving and without foundation. The court denied the defendants' motions and stated: "The award of $50,000 does not shock the conscience and is well within the limits of a reasonable award given the plaintiff's testimony concerning the ongoing pain and suffering he has endured as a result of the accident." This appeal followed. Additional facts will be set forth as necessary.

I

The defendants first claim that the court improperly denied their motions for remittitur and to set aside the verdict and for a new trial. Specifically, they argue that the award of $50,000 in noneconomic damages was excessive. We are not persuaded.

General Statutes § 52-216a provides in relevant part: "If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon the failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial." See *Cohen* v. *Yale-New Haven Hospital*, 260 Conn. 747, 754–55, 800 A.2d 499 (2002) (plaintiff faced with order of remittitur may either accept remittitur or new trial); see also Practice Book § 16-35. A remittitur impacts

---

[2] At a collateral source hearing, the parties stipulated to a reduction of $1457 in medical bills, leaving a balance of $305.

the "delicate balance between two of the most basic principles of our law: the constitutional right of litigants to have the jury determine the amount of damages awarded; and the trial court's broad authority to supervise the trial process." *Saleh* v. *Ribeiro Trucking, LLC*, 303 Conn. 276, 277, 32 A.3d 318 (2011).

Our Supreme Court recently set forth the standards for both the trial court and a reviewing appellate court with respect to a motion for remittitur. "In determining whether to order remittitur, the trial court is required to review the evidence in the light most favorable to sustaining the verdict. . . . Upon completing that review, the court should not interfere with the jury's determination except when the verdict is plainly excessive or exorbitant. . . . The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption. . . . The court's broad power to order a remittitur should be exercised only when it is manifest that the jury [has] included items of damage which are contrary to law, not supported by proof, or contrary to the court's explicit and unchallenged instructions. . . .

"*Furthermore, [t]he decision whether to reduce a jury verdict because it is excessive as a matter of law [within the meaning of § 52-216a] rests solely within the discretion of the trial court* . . . . We have explained the reason underlying the great breadth of the trial court's discretion over such matters: There are, to be sure, sometimes, verdicts of this kind, when the trial judge is required by the interests of justice to set them aside. That such verdicts are infrequent is a tribute to the general intelligence, fairness and integrity of juries. This power of supervision and correction which

the judge has over the verdict is an essential part of the jury system. It tends to make jurors more careful in reaching their conclusions, and gives confidence to all suitors that the finding of a jury will not be affected by any improper motives. Trial by jury, in the primary and usual sense of the term at the common law and in the American constitutions, is not merely a trial by a jury of twelve [persons] before an officer vested with authority to cause them to be summoned and empanelled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of twelve [persons], in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict, if in his opinion it is against the law or the evidence. . . . [Consequently], the proper standard of review of a trial court's decision to grant or deny a motion to set aside a verdict as excessive as a matter of law is that of an abuse of discretion. Accordingly, the ruling of the trial court on the motion to set aside the verdict as excessive is entitled to great weight and every reasonable presumption should be given in favor of its correctness." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 281–82; see *Mahon* v. *B.V. Unitron Mfg., Inc.*, 284 Conn. 645, 662, 935 A.2d 1004 (2007) ("[t]he decision whether to reduce a jury verdict because it is excessive as a matter of law [within the meaning of § 52-216a] rests solely within the discretion of the trial court" [internal quotation marks omitted]); *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 167, 681 A.2d 293 (1996) (proper standard of review of trial court's decision to grant or deny motion to set aside verdict as excessive as matter of law is that of abuse of discretion); *Oakes* v. *New England Dairies, Inc.*, 219 Conn. 1, 14, 591 A.2d 1261 (1991)

(same); *Fontana* v. *Zymol Enterprises, Inc.*, 95 Conn. App. 606, 611, 897 A.2d 694 (2006) (function of this court to determine whether trial court abused its discretion in denying defendant's motion to set aside verdict); *Bruneau* v. *Seabrook*, 84 Conn. App. 667, 674, 854 A.2d 818 (same), cert. denied, 271 Conn. 930, 859 A.2d 583 (2004).[3]

Our Supreme Court acknowledged that the "shocks the sense of justice standard provides vague guidance"; (internal quotation marks omitted) *Saleh* v. *Ribeiro Trucking, LLC*, supra, 303 Conn. 282; and that a reviewing court is faced with "the thorny task of deferentially reviewing a decision that itself was required to employ deferential review, where the primary challenge is that the trial court abused its discretion by failing to accord proper deference to the jury's verdict." Id., 285. "In a sense, [an appellate court] must retrace the steps of the trial court. That is, we must begin by reviewing the evidence, construed in the light most favorable to sustaining the verdict, just as the trial court was required to do. We then must examine the trial court's decision in such a way that we employ every reasonable presumption in favor of its correctness." Id.

---

[3] We are mindful of the decision in *Deas* v. *Diaz*, 121 Conn. App. 826, 837, 988 A.2d 200, cert. denied, 298 Conn. 905, 3 A.3d 69 (2010), in which this court stated: "Looking to the plain language of § 52–216a and the case law that has interpreted it, we conclude that the court's decision on whether to deny or to grant a motion for remittitur because it is excessive 'as a matter of law' is entitled to plenary review on appeal; the court's decision as to the amount of the remittitur, if ordered, should be analyzed under an abuse of discretion standard, however." See also J. Wildes, "Tort Developments in 2010," 85 Conn. B.J. 1, 4–5 (2011).

Our Supreme Court's decision in *Saleh*, released after our decision in *Deas*, clearly established abuse of discretion as the applicable standard of review with respect to the issue of whether the trial court properly denied a motion for remittitur. Finally, we note that our position regarding the appropriate standard of review is consistent with a case recently decided by this court. See *Tomick* v. *United Parcel Service, Inc.*, 135 Conn. App. 589, 615 n.18, 43 A.3d 722 (2012) (Appellate Court bound to apply abuse of discretion standard as set forth in *Saleh*).

The following additional facts are necessary for the resolution of this issue. Interrogatories were not requested by the parties, and, therefore, none was submitted to the jury.[4] Instead, the jury used the plaintiff's verdict form to specify each element of the damages it awarded. The jury listed $34,222 as lost wages. In the medical bills section of the verdict form, the jury awarded the plaintiff damages for (1) Vernon Walk-In Center for treatment on December 4, 2006, in the amount of $305, (2) Orthopedic Associates of Central CT, P.C., for treatment on April 2, 2007, in the amount of $235 and (3) Integrated Rehabilitation Services for treatment during the time period of April 6, 2007, through April 20, 2007, in the total amount of $1222. The jury did not award the plaintiff damages for medical treatment that he had received after April 20, 2007. The total damages awarded by the jury for medical treatment totaled $1762, and it awarded no damages for future medical bills. The jury awarded $35,984 for the economic damages and $50,000 in noneconomic damages, for a total award of $85,984.

The defendants argue that by comparing the jury's award of medical bills to the evidence at trial, "[i]t is a reasonable interpretation of the verdict form that the jury did not think [the] plaintiff injured his right shoulder in the accident since [it] did not award any treatment after [April 20, 2007], which is the date [the] plaintiff stopped treating for his right wrist." In other words, the defendants claim that $50,000 in noneconomic damages for the right wrist sprain is excessive

[4] "The purpose of a jury interrogatory is to elicit a determination of material facts and to furnish the means of testing the correctness of the jury's verdict." *Sinert* v. *Olympia & York Development Co.*, 38 Conn. App. 844, 852 n.1, 664 A.2d 791, cert. denied, 235 Conn. 927, 667 A.2d 553 (1995); see *Earlington* v. *Anastasi*, 293 Conn. 194, 200, 976 A.2d 689 (2009). Jury interrogatories also act as a guide and written chronicle of the jury's reasoning. *Hammer* v. *Mount Sinai Hospital*, 25 Conn. App. 702, 710, 596 A.2d 1318, cert. denied, 220 Conn. 933, 599 A.2d 384 (1991).

and outside the limits for fair and reasonable compensation.

The defendants have not provided us with any support for their contention that despite the lack of jury interrogatories, the verdict form clearly established that the jury rejected the claim of the plaintiff that he suffered a right shoulder injury. We note that the better procedure would have been to use jury interrogatories in accordance with Practice Book § 16-18. Nevertheless, even if we assume, arguendo, that the jury rejected the plaintiff's claimed shoulder injury, we conclude that the award of $50,000 in noneconomic damages does not shock the sense of justice, and, therefore, the trial court did not abuse its broad discretion in denying the motions for a new trial and remittitur.

The plaintiff testified that following the accident, his wrist and elbow were "really sore . . . ." He described the pain in his wrist as "intense." The next day, he received medical treatment, including a splint. Approximately four months later, he sought treatment from a physician because his wrist only had improved "a little bit" and it was interfering with his ability to work as a steeplejack, due to numbness in his fingers. He testified that following the accident, he has difficulty sleeping and has lost the ability to play golf. During cross-examination, the plaintiff stated that after five physical therapy sessions, as of April, 2007, his elbow and wrist had improved dramatically but continued to remain an issue.

It is well established that "the amount of an award [of damages] is a matter peculiarly within the province of trier of facts. . . . [T]he court should not interfere with the jury's determination except when the verdict is plainly excessive or exorbitant." (Internal quotation marks omitted.) *Thorsen* v. *Durkin Development, LLC*, 129 Conn. App. 68, 74, 20 A.3d 707 (2011). It is not the

size of the verdict but, rather, whether it falls within the uncertain limits of just damages or shocks the sense of justice so as to lead to the conclusion that the jury was improperly influenced by partiality, prejudice, mistake or corruption. See *Sovereign Bank* v. *Licata*, 116 Conn. App. 483, 505, 977 A.2d 228 (2009), appeal dismissed, 303 Conn. 721, 36 A.3d 662 (2012) (certification improvidently granted).

We cannot conclude that the court abused its discretion in denying the defendants' motions for a new trial or remittitur. The parties stipulated to the plaintiff's life expectancy of eighteen years. There was evidence of the pain suffered by the plaintiff at the time of the accident, his difficulty sleeping and his loss of the ability to engage in a recreational activity. Additionally, the plaintiff stated that although his wrist had improved, it remained an "issue" for him.[5] Given the uncertain nature of compensation for noneconomic damages, and the fact that a generous award of said damages is permissible, so long as it does not shock the sense of justice, the trial court properly denied the defendants' motions. See *Johnson* v. *Chaves*, 78 Conn. App. 342, 347, 826 A.2d 1286, cert. denied, 266 Conn. 911, 832 A.2d 70 (2003).

II

The defendants next claim that the court improperly admitted certain documents into evidence. Specifically, they argue that the court improperly admitted into evidence trial exhibits 5 through 11 over their objections

---

[5] To the extent that there was contradictory evidence regarding the duration of the plaintiff's wrist injury, we note that "[t]he existence of conflicting evidence [further] curtails the authority of the court to overturn the verdict because the jury is entrusted with deciding which evidence is more credible and what effect it is to be given." (Internal quotation marks omitted.) *Embalmers' Supply Co.* v. *Giannitti*, 103 Conn. App. 20, 55, 929 A.2d 729, cert. denied, 284 Conn. 931, 934 A.2d 246 (2007).

that the documents were self-serving and hearsay. We are not persuaded.

The following additional facts are necessary for our resolution of this claim. During the testimony of the plaintiff, his attorney moved to admit exhibit 10 into evidence. Exhibit 10 is a letter written by the plaintiff to Patricia Lee, the administrator of the Universalist Church in West Hartford. In this letter, dated July 8, 2008, the plaintiff informed Lee that he would be unable to perform the work that she had requested "involving the painting of the church front, repair of soffits [and] fascias and counterflashing and the miscellaneous projects" that had been discussed for the contract price of $81,000. The plaintiff further wrote that the reason he could not perform this work was an injury to his shoulder, causing him to "slow down" his work schedule. Per the plaintiff's request, Lee signed the letter at the bottom to acknowledge its receipt on behalf of the Universalist Church and returned it to the plaintiff.

The defendants' counsel objected on the grounds that the letter was a self-serving letter by the plaintiff and constituted "hearsay as to the signature." The plaintiff's counsel responded that the letter was a business record "because [the plaintiff was] advising . . . an existing customer." The defendants' counsel again argued that it was self-serving. The court admitted the letter into evidence as a full exhibit without any further explanation. The plaintiff's counsel then sought to have a contract between the plaintiff and the Universalist Church regarding a separate, specific project admitted into evidence as exhibit 11. Over the same objections raised by the defendants, the court admitted the contract into evidence. Specifically, the defendants claimed that Lee's signature on the contract constituted inadmissible hearsay. The court, after determining that the plaintiff had started and received partial payment for the specific project listed in this contract, admitted it into evidence.

The plaintiff stated that he had not completed this project and, therefore, had not received approximately $50,000.

The plaintiff then sought to introduce several letters into evidence that were similar to the one described in exhibit 10. Exhibit 7 was a letter written by the plaintiff to Sebastian Mazzarella regarding a proposed project to rebuild a front porch for $12,500; exhibit 8 was a letter written by the plaintiff to Peter Parrotta regarding a proposed project to perform gutter and roof repair work for $150 per hour; and exhibit 9 was a letter written by the plaintiff to Shirley Finney regarding a proposed project for a roof replacement for $20,000. Each of these letters contained a signature at the bottom, indicating that the letter had been received, and was admitted into evidence over the defendants' objection.

The plaintiff then sought to admit into evidence exhibit 5, which was a list created by the plaintiff of long-standing customers and the amount of billings that he had lost as a result of his injury. During voir dire by the defendants' counsel, the plaintiff acknowledged that he had created this list for the purpose of litigation. The court noted the defendants' objection to this exhibit's admission into evidence. Finally, Diane P. Johnson, the plaintiff's wife, testified that she maintained the plaintiff's financial records. During the direct examination of Diane Johnson, the plaintiff's counsel sought to introduce exhibit 6 into evidence, an invoice from the plaintiff's company to Travelers Insurance Company (Travelers) dated November 2, 2006, in the amount of $14,130. This exhibit also included the check from Travelers paying the invoice. The defendants' counsel objected on the basis that the invoice was dated before the accident and was self-serving. Without hearing from the plaintiff's counsel or any further elaboration, the court admitted the document into evidence.

On appeal, the defendants argue that exhibits 5 through 11 were hearsay and did not fall within a recognized exception and, therefore, improperly were admitted into evidence. The defendants did not raise a hearsay objection to exhibit 6 at trial, and, therefore, we need not review their claim of error with respect to that particular exhibit. "Practice Book [§ 5-5] provides in pertinent part that [w]henever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he [or she] desires it to go upon the record, before any discussion or argument is had. [Practice Book § 60-5] provides in [relevant] part that the [appellate courts are] not bound to consider a claim unless it was distinctly raised at the trial . . . . We have noted that [t]he purpose of the rule requiring that an exception be taken that distinctly states the objection and the grounds therefore is to alert the court to any claims of error while there is still an opportunity for correction. . . . This rule is essential to avoid trial by ambush [of the presiding judge and the opposing party]. . . . These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Citations omitted; internal quotation marks omitted.) *State v. Jose G.*, 290 Conn. 331, 342–43, 963 A.2d 42 (2009). Accordingly, we decline to review the defendants' claim with respect to the admissibility of exhibit 6.[6]

---

[6] We note that at one point in their brief, the defendants state: "The court allowed into evidence plaintiff's exhibits 5, 6, 7, 8, 9, 10 and 11 over defendants' objections that they were hearsay, self-serving and without proper foundation." As we stated previously, the defendants objected at the trial to the admission of exhibit 6 as "self-serving." Aside from this single sentence, the defendants have not presented any legal analysis as to why the court committed reversible error when it admitted exhibit 6 into evidence. "[W]e are not required to review claims that are inadequately briefed.

We now turn to exhibits 7, 8, 9, 10 and 11. As stated above, exhibits 7 through 10 consisted of letters written by the plaintiff to alert his customers that he would be unable to perform work for them due to his health. These letters were signed by the customers and returned to the plaintiff. Exhibit 11 is a signed contract between the plaintiff and the Universalist Church for repair work to be performed by the plaintiff. The defendants objected to the admission of these exhibits as self-serving documents and that the signatures on these documents were inadmissible hearsay. The plaintiff argued that they were admissible as business records. The court admitted the documents but never set forth a basis for its ruling.

We conclude that the record is inadequate for our review. This court is left to speculate as to whether the trial court concluded that the exhibits constituted business records and were admissible under that exception to the rule against hearsay,[7] or whether the signatures on the letters were not offered for the truth of the matter asserted, and therefore not hearsay.[8] "This

---

. . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.) *State* v. *Claudio C.*, 125 Conn. App. 588, 600, 11 A.3d 1086 (2010), cert. denied, 300 Conn. 910, 12 A.3d 1005 (2011).

[7] "To be admissible under the business record exception to the hearsay rule, a trial court judge must find that the record satisfies each of the three conditions set forth in . . . [General Statutes] § 52-180. The court must determine, before concluding that it is admissible, that the record was made in the regular course of business, that it was the regular course of such business to make such a record, and that it was made at the time of the act described in the report, or within a reasonable time thereafter." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Gilmore*, 289 Conn. 88, 116, 956 A.2d 1145 (2008). See Conn. Code Evid. § 8-4.

[8] "Under the hearsay rule, a statement, other than one made by the declarant while testifying at the proceeding, offered in evidence to establish the

court has consistently adhered to the rule of Practice Book § 61-10, which provides that it is the responsibility of the appellant to provide an adequate record for review. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the plaintiff's claims] would be entirely speculative." (Internal quotation marks omitted.) *Modugno* v. *Colony Farms of Colchester, Inc.,* 110 Conn. App. 200, 208–209, 954 A.2d 270 (2008).

Finally, we turn to the question of whether the court properly admitted into evidence exhibit 5, a list created by the plaintiff of long-standing customers and the amount of billings that he had lost as a result of his injury. At trial, the defendants' counsel objected to this document being admitted into evidence but failed to identify the basis of his objection. The defendants' counsel then conducted a voir dire examination of the plaintiff who stated that he had prepared exhibit 5 to "illustrate how [the] injury had affected [his] ability to make a living" and that it had been prepared for the purposes of litigation. After the court admitted the exhibit into evidence, the defendants' counsel asked if his objection had been noted but never set forth the grounds for the objection.

We conclude that the record is inadequate to review the defendants' claim with respect to the admission of exhibit 5. The record does not reveal the basis for the objection at trial, or the court's grounds for admitting

truth of the matter asserted; Conn. Code Evid. § 8-1; generally is inadmissible in court. Conn. Code Evid. § 8-2." (Internal quotation marks omitted.) *State* v. *Garlington,* 122 Conn. App. 345, 360, 998 A.2d 1197, cert. denied, 298 Conn. 910, 4 A.3d 835 (2010). If evidence is not offered for the truth of what it asserted, it does not constitute hearsay. See *Sowinski* v. *Sowinski,* 72 Conn. App. 25, 31, 804 A.2d 872 (2002).

the exhibit into evidence. Furthermore, the defendants have inadequately briefed their claim as to exhibit 5.[9] As we previously have mentioned, the thrust of the defendants' appellate argument is that the signatures by the customers of the plaintiff constitute inadmissible hearsay. There is no such signature on this document. Finally, we note that the defendants have failed to show any harm from this document's admission into evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] See footnote 6 of this opinion.