******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TESSA SCANDARIATO *v.* EDWARD BORRELLI
(AC 35918)

Gruendel, Lavine and Flynn, Js.

*Argued September 15—officially released December 2, 2014*

(Appeal from Superior Court, judicial district of New

London, Martin, J.)

*Lawrence H. Adler*, with whom, on the brief, was *Patricia M. Shepard*, for the appellant (defendant).

*Stephen M. Reck*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The defendant, Edward Borrelli, appeals from the judgment of the trial court denying his motions for remittitur and to set aside the verdict. The defendant filed these motions after a jury verdict awarding damages to the plaintiff, Tessa Scandariato, on a claim of negligence. On appeal, the defendant claims that the court (1) improperly allowed the plaintiff's expert to testify to a permanent partial impairment rating as to the plaintiff's brain, (2) failed to instruct the jury properly on the impairment rating, (3) and failed to consider the effect of the allegedly improper testimony on the jury's determination of damages when ruling on his posttrial motions. We disagree, and accordingly, affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On October 20, 2006, the plaintiff and the defendant were involved in an automobile accident in Norwich when their vehicles collided. The accident occurred while the plaintiff was proceeding directly through an intersection and the defendant was making a left turn into a gasoline station parking lot. The defendant turned his vehicle directly into the plaintiff's path, leaving her no time to avoid the collision. The plaintiff alleged that as a result of the accident, she sustained injuries to her spine, neck, shoulders, head, and chest. The plaintiff commenced a negligence action against the defendant, seeking economic damages, including medical expenses and lost wages, as well as noneconomic damages, including damages for the permanent impairment to her ability to enjoy and participate in life's activities. The defendant denied the allegations of negligence, asserting that the plaintiff's negligence was the proximate cause of the accident.

The case was tried before a jury in the fall of 2012. During the trial, the plaintiff proffered the testimony of Anthony G. Alessi, a neurologist, who opined on the extent and permanency of the plaintiff's injuries. Alessi testified that, in his professional opinion, the plaintiff's injuries were caused by the automobile accident with the defendant. Furthermore, he stated that, in his opinion, the plaintiff suffered chronic injuries that would persist for the rest of her life. Alessi also opined that these injuries resulted in a permanent partial impairment of 5 percent of the plaintiff's brain.

At the conclusion of trial, the jury returned a verdict in favor of the plaintiff, awarding her $10,169.24 in economic damages and $306,296.60 in noneconomic damages. The jury assigned 80 percent comparative fault to the defendant and 20 percent comparative fault to the plaintiff. As a result, the plaintiff's total recovery was reduced by 20 percent to $253,172.67. The defendant then filed a motion to set aside the verdict and a

motion for remittitur. The court denied the motions and rendered judgment in accordance with the verdict. This appeal followed.

I

The defendant claims that the court improperly admitted the expert testimony of Alessi regarding the permanent partial impairment rating that he assigned to the plaintiff's brain. Specifically, the defendant contends that the court improperly concluded that the testimony was admissible without first satisfying the threshold requirements set forth in *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), and second, that the testimony was irrelevant or unduly prejudicial under §§ 4-1 and 4-2 of the Connecticut Code of Evidence. We disagree.

A

The following additional facts are relevant to our resolution of this claim. Prior to trial, the plaintiff disclosed her intention to proffer the expert testimony of Alessi, her treating physician and a board certified neurologist. Alessi opined at his deposition, and again at trial,[1] that the plaintiff suffered from chronic and severe headaches, which were the result of a neck injury sustained during the accident. In an attempt to quantify these headaches for the purposes of assessing damages, Alessi assigned a 5 percent permanent partial impairment rating to the plaintiff's brain.

Alessi explained his reasoning for assigning the impairment rating to the brain rather than the neck or the shoulders. First, he stated that he assigned the impairment to the brain because his treatment of the patient focused on her headaches and did not include treatment of her neck or shoulders. Next, he clarified that it is often difficult to rate impairment in cases, such as this one, where the injury is sustained in one area of the body (neck) but where the pain manifests itself in another area (head). He also noted that the 5 percent permanency rating represented the lowest possible rating he could have assigned. Finally, Alessi clarified that the impairment rating to the brain was solely related to the plaintiff's headaches and was in no way indicative of any cognitive loss.

Alessi readily admitted that the impairment rating did not follow the American Medical Association Guidelines to the Evaluation of Permanent Impairment (AMA guidelines). He explained his reasoning for deviating from the AMA guidelines as twofold: first, the guidelines fail to provide adequate direction for rating brain injuries[2] and second, the guidelines would have exaggerated the plaintiff's injuries by recommending that Alessi rate both the plaintiff's head and neck.[3]

Prior to trial, the defendant sought to preclude Alessi's impairment rating testimony on the ground that

it pertained to the brain and not to the neck or the spine. On August 31, 2012, the defendant filed a motion in limine, seeking to preclude the testimony. Within the motion in limine, the defendant conceded that "[c]ertainly, the medical treatment of the plaintiff and her condition and prognosis are valid scientific subjects within the expertise of her treating physician. However, Alessi's testimony fails the second requirement that the scientific evidence fits the case in which it is presented." The defendant argued that an impairment rating of the brain was "illogical" when the plaintiff alleged injuries to her neck and shoulders.

On September 28, 2012, the court heard arguments on the motion in limine. The court heard oral argument from both the defendant's and the plaintiff's counsel. The court also considered arguments made in the defendant's motion, as well as in the plaintiff's memorandum of law in opposition to the motion. In addition, prior to the hearing, the court reviewed the transcript of Alessi's deposition testimony. Upon reviewing the information before it, the court concluded that Alessi was an expert whose testimony was reliable and relevant. The court also determined that any potential jury confusion with regard to the impairment rating of the brain would be settled through cross-examination and proper jury instruction. As a result, the court denied the defendant's motion in limine and admitted the impairment testimony at trial.[4]

We first set forth the applicable standard of review and legal principles governing our analysis of this claim. "[T]he trial court is vested with wide discretion in determining the admissibility of evidence. . . . Because a trial court's ruling under *Porter* involves the admissibility of evidence, we review that ruling on appeal for an abuse of discretion." (Internal quotation marks omitted.) *Milton* v. *Robinson*, 131 Conn. App. 760, 770, 27 A.3d 480 (2011), cert. denied, 304 Conn. 906, 39 A.3d 1118 (2012).

"In *State* v. *Porter*, supra, 241 Conn. 57, our Supreme Court adopted the test for determining the admissibility of scientific evidence set forth in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). In so doing, our Supreme Court noted two threshold requirements to the admissibility of scientific evidence. First, that the subject of the testimony must be scientifically valid, meaning that it is scientific knowledge rooted in the methods and procedures of science . . . and is more than subjective belief or unsupported speculation. . . . This requirement establishes a standard of evidentiary reliability . . . as, [i]n a case involving scientific evidence, evidentiary reliability will be based upon scientific validity. . . . Second, the scientific evidence must fit the case in which it is presented. . . . In other words, proposed scientific testimony must be demonstrably relevant to

the facts of the particular case in which it is offered, and not simply be valid in the abstract." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Haughey*, 124 Conn. App. 58, 71, 3 A.3d 980, cert. denied, 299 Conn. 912, 10 A.3d 529 (2010).

The defendant argues that Alessi's impairment rating testimony required a validity assessment under *Porter* because it was not based on the AMA guidelines. Although the defendant concedes that "the process of assigning permanency ratings to injured persons for the purposes of litigation is commonplace and ordinarily accepted," he maintains that a validity assessment must be conducted when those ratings are not based on "any scientific or peer reviewed text . . . ." We agree that a preliminary assessment is required to determine the validity of an expert's underlying methodology. We conclude, however, that the court's actions constituted a proper validity assessment under the requirements of *Porter*.

In *Porter* and its progeny, our appellate courts emphasized the need for flexibility in determining the reliability of scientific evidence, urging trial courts to make assessments on a case-by-case basis. See *State* v. *Porter*, supra, 241 Conn. 146 ("'[t]he inquiry . . . is, we emphasize, a flexible one' "); see also *State* v. *Griffin*, 273 Conn. 266, 276, 869 A.2d 640 (2005) (acknowledging that *Porter* requires flexible, case-by-case approach); *Hayes* v. *Decker*, 263 Conn. 677, 685 n.2, 822 A.2d 228 (2003) (trial court found to be in error for applying *Porter* inquiry mechanically). Among the factors that courts should consider are "general acceptance in the relevant scientific community . . . whether that methodology has been tested and subjected to peer review . . . the prestige and background of the expert witness supporting the evidence . . . [t]he extent to which the scientific technique in question relies on subjective interpretations and judgments by the testifying expert, rather than on objectively verifiable criteria . . . whether a testifying expert can present and explain the data and methodology underlying his or her scientific testimony in such a manner that the fact finder can reasonably and realistically draw its own conclusions therefrom . . . [and] whether the scientific technique underlying the proffered expert testimony was developed and implemented solely to develop evidence for in-court use, or whether the technique has been developed or used for extrajudicial purposes." (Citations omitted; internal quotation marks omitted.) *State* v. *Porter*, supra, 84–86; id., 86–87 (recognizing that "[t]he actual operation of each factor . . . depends greatly on the specific context of each case").

With this standard in mind, we cannot conclude that the court failed to serve its gatekeeping function under *Porter*. On September 28, 2012, the court held a short hearing on the morning of trial before it ruled on the

motion in limine. Prior to the hearing, the court had reviewed the transcript of Alessi's deposition testimony, which would later be shown to the jury in lieu of live testimony. The deposition testimony detailed Alessi's extensive background as a neurologist. Alessi testified that he was a board certified neurologist who was licensed to practice medicine in Connecticut, New York, and Michigan. He testified that he served as the director of a stroke program at William W. Backus Hospital in Norwich, and had previously served as the hospital's chairman of neurology from 2010 until 2012. He also testified that he was an associate clinical professor in neurology at the University of Connecticut. He stated that he had previously served as an expert witness in other trials; having testified in court "about twenty times" throughout his career. On the basis of these statements, the court reasonably could have concluded that Alessi had the expertise and background to support his testimony. Additionally, the court reasonably could have found that Alessi would be capable of explaining his findings to the jury in a way that would allow it to reach an independent conclusion.[5]

During his deposition, Alessi explained the methodology underlying his conclusions. First, Alessi's testimony revealed that the impairment rating was based primarily on his direct observation, treatment, and oversight of the plaintiff. The plaintiff became a patient of his on December 1, 2008, and continued as a patient through June, 2009. At the first medical appointment, Alessi conducted a neurological examination, which consisted of a mental status evaluation, cranial nerve testing, motor examination, deep tendon reflexes, and a sensory and a musculoskeletal examination. During Alessi's treatment, he prescribed physical therapy treatment for the plaintiff and oversaw her progress while she attended physical therapy sessions. Alessi also prescribed the plaintiff Prednisone to treat inflammation of the muscles. The record thus indicates that Alessi's methods were "developed or used for extrajudicial purposes" rather than having been "implemented solely to develop evidence for in-court use . . . ." *State* v. *Porter*, supra, 241 Conn. 86.

Alessi also based his conclusions on his review of the plaintiff's other medical records. During his treatment of the plaintiff, he had reviewed an MRI that was conducted on the plaintiff's brain immediately after the accident. He also had access to all of the plaintiff's hospital, chiropractic, and physical therapy records. On the basis of this information, he concluded that his opinions were consistent with the findings of the plaintiff's other health care providers. This consistency between Alessi and other medical professionals served as the equivalent of a "peer review" under *Porter*, and provided another factor weighing in favor of admitting his testimony. Id., 86 (whether methodology has been tested or subjected to peer review is important factor

in determining reliability).

Finally, Alessi spent time at his deposition describing impairment ratings, including the process he used in developing the plaintiff's rating. He testified that an impairment rating is "an estimate based on the history and physical examination of what [the plaintiff's] impairment will be based on the injury . . . at that time." He then went on to explain that when he rates impairments, he typically follows the fifth edition of the AMA guidelines.[6] In this particular case, however, he based the rating on his own knowledge and experience because the guidelines did not give proper guidance for this type of injury.[7] Alessi further described that his reasoning for rating the brain was his belief that the source of the impairment was the headaches, rather than the damage to the muscles in the plaintiff's neck. He stated that in this case, where damage to the neck caused pain to radiate up to the head, the guidelines would have recommended that he rate impairment to both the neck and the head. He further stated that the guidelines fail to provide specific reference charts for ratings of the brain. The court found this explanation sufficient and the underlying testimony reliable.

On the basis of this information, the court reasonably could have concluded that Alessi's methodology, which was based on his experience treating the plaintiff, his review of her medical records, and the guidance of the AMA guidelines, was reliable. The court also could have concluded that Alessi was capable of presenting his methodology in such a way "that the fact finder can reasonably and realistically draw its own conclusions therefrom." *State* v. *Porter*, supra, 241 Conn. 86.

In concluding that the court properly admitted Alessi's testimony, we must also acknowledge an important limitation under *Porter*, which is that courts must review only the *underlying methodologies* of the expert's conclusions, and not the conclusions themselves. Id., 83. In the present case, when the defendant disputed Alessi's impairment rating, he was challenging the expert's conclusions and not the underlying methodology. Although the defendant may argue that it would have been more appropriate to have rated impairment of the neck or the cervical spine, a trial court does not have the power to preclude testimony on the basis of its opinion that there are "better grounds for an alternative conclusion." *Hayes* v. *Decker*, supra, 263 Conn. 686 (trial court improperly found expert's testimony inadmissible based on conclusion court drew from that testimony and not its underlying methodology). For example, in *State* v. *Pappas*, 256 Conn. 854, 866–67, 776 A.2d 1091 (2001), the defendant sought to exclude mtDNA analysis of hair recovered from the scene of a robbery. Our Supreme Court concluded that the mtDNA analysis process was valid and reliable, and that any issues regarding contamination of the sample

would bear solely on the weight of the evidence, rather than its admissibility, at trial. Id., 880–81. Similarly, we conclude that Alessi's impairment rating was based on reliable scientific and medical methods of treatment. Therefore, any challenge regarding the actual application of the impairment rating must bear solely on the weight of the evidence.

Finally, we find no error in the court's determination that it could assess the reliability of expert testimony without the need for a prolonged and detailed *Porter* hearing. The court understood Alessi's extensive knowledge and personal experience with the plaintiff, as well as his ability to explain his methods and reasoning. We further note that because Alessi's testimony was shown to the jury by video, the court was in the unique position to review the actual trial testimony when evaluating its reliability. On the basis of the facts and procedural history of this case, we cannot say that the court abused its discretion when it made the preliminary determination to admit Alessi's testimony under *Porter*.

B

Alternatively, the defendant claims that the impairment testimony was inadmissible because it was irrelevant and unduly prejudicial. As the defendant did not object to the testimony on this basis at trial, we do not reach the merits of these claims.

The standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. "This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Citations omitted; internal quotation marks omitted.) *State* v. *Gonzalez*, 272 Conn. 515, 539–40, 864 A.2d 847 (2005); see Practice Book § 5-5. While it is true that evidence admissible under *Porter* is still subject to all other rules regarding the admissibility of evidence,[8] we are not bound to consider claims raised for the first time on appeal. *State* v. *Brice*, 186 Conn. 449, 457, 442 A.2d 906 (1982).

A review of the trial transcript reveals that there were no direct objections to Alessi's testimony regarding the 5 percent permanent partial impairment rating given to the brain.[9] Furthermore, a review of the record confirms that questions of relevancy or undue prejudice were not raised in the defendant's motion in limine or in any other pretrial motion. Trial counsel is under an obligation to distinctly raise questions of law on the

record prior to closing argument or in a written trial brief. See Practice Book § 5-2. As these claims were not properly preserved according to our rules of procedure, we do not address the merits of the claims on appeal. See Practice Book § 60-5.

## II

The defendant additionally claims that the court erred by failing to instruct the jury properly as to the following: that the plaintiff was not claiming an injury to the brain, that there were no cognitive deficits as a result of the accident, and that the permanent impairment rating applied only to her alleged neck injury. We disagree.

We begin with the standard of review governing the defendant's challenge to the trial court's jury instruction. "Our review of the defendant's claim requires that we examine the court's entire charge to determine whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. (Citations omitted; internal quotation marks omitted.) *State* v. *Aviles*, 277 Conn. 281, 309–10, 891 A.2d 935, cert. denied, 549 U.S. 840, 127 S. Ct. 108, 166 L. Ed. 2d 69 (2006).

Under this standard of review, we do not find that the court's instructions were improper or misleading. In reviewing the jury instructions, it is apparent that the court took steps to avoid jury confusion on the issue of permanency. The court provided, in relevant part, the following instructions to the jury: "In this case, the plaintiff's neurologist, Anthony Alessi . . . rendered an opinion that [the plaintiff] suffered a 5 percent permanent partial impairment to the brain, which translates to a 5 percent whole person permanent partial impairment *as a result of her headaches*, which were *caused by her permanent neck injury*. Dr. Alessi opined that the plaintiff's permanent injuries are a direct result of the motor vehicle collision of October 20, 2006. If you find by a fair preponderance of the evidence that the plaintiff did suffer a permanent injury as a result of this collision, then she should be fairly compensated for that." (Emphasis added.) These instructions properly summarized the plaintiff's allegations by stating that although Alessi categorized the injury as a brain impairment, the substance of the claim was that the plaintiff suffered from headaches as a result of an injury to the neck. The court additionally instructed the jury that the plaintiff claims that she suffered "injuries to her spine, neck, back, shoulders, head and chest . . . ." The jury was never instructed to consider a cognitive injury to the brain, nor was the plaintiff ever allowed to argue such an injury at trial.

Having reviewed the court's instructions, we find that the charge to the jury was proper. The court's instructions provided sufficient guidance for the jury to consider the credibility of Alessi's testimony. It properly tailored the instructions to identify the plaintiff's allegations of injuries to her neck, head, and shoulders and not as injuries to her brain. On that basis, the court's instructions were proper because they were correct in law and adequately relayed the substance of the defendant's requested instructions.

III

Finally, the defendant claims that the court failed to consider the effect of Alessi's testimony on the jury's award of noneconomic damages when it denied the defendant's motions to set aside the verdict and for remittitur. We disagree.

"The standard of review governing our review of a trial court's denial of a motion to set aside the verdict is well settled. The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . [The court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 702, 900 A.2d 498 (2006).

The standard governing review of motions for remittitur is similarly that of an abuse of discretion. See *Johnson* v. *Pike*, 136 Conn. App. 224, 228, 46 A.3d 191 (2012). "The court's broad power to order a remittitur should be exercised only when it is manifest that the jury [has] included items of damage which are contrary to law, not supported by proof, or contrary to the court's explicit and unchallenged instructions." (Internal quotation marks omitted.) *Saleh* v. *Ribeiro Trucking, LLC*, 303 Conn. 276, 281, 32 A.3d 318 (2011). The relevant inquiry is whether the verdict falls within the necessarily uncertain limits of fair and reasonable compensation or whether it so shocks the conscience as to compel the conclusion that it was due to partiality, prejudice or mistake. Id.

On the basis of our review of the record, we conclude that the court did not abuse its discretion when it denied the defendant's motions. In its memorandum of decision, the court explained that the jury verdict was reasonably supported by the facts and law. The court stated that Alessi's testimony, as well as his responses to cross-

examination, carefully explained his findings, leaving little room for confusion as to the basis for an impairment rating of the brain. Furthermore, our review of the transcript confirms that additional evidence of impairment was provided through the testimony of three of the plaintiff's family members.[10] Each family member described the plaintiff's active lifestyle, the physical demands of her profession, as well as how her life has been impacted by her injuries. Additionally, evidence was presented that the plaintiff was a young individual who could be expected to live with her injuries for fifty-four years.[11] Under these facts, we do not find a clear and palpable mistake in the jury's conclusion, nor do we find that the jury verdict was unreasonable or unfair. Therefore, the court's rulings denying the defendant's motions to set aside the verdict and for a remittitur were not an abuse of discretion.[12]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Alessi's trial testimony was video recorded prior to trial. The deposition video, including direct examination and cross-examination, was presented to the jury on October 1, 2012.

[2] Alessi testified in part:

"[The Defendant's Counsel]: With respect to the 5 percent rating of the brain, is it fair to say that you didn't actually go to an AMA guidebook and come up with that number?

"[Alessi]: No.

"[The Defendant's Counsel]: Unlike the cervical spine ratings, there are no specific charts that you would use when you rate the brain.

"[Alessi]: That's why I didn't use the AMA guidelines."

[3] At Alessi's deposition, he stated: "For the neck and the headaches. The two are so—so many people try to compartmentalize this, and that's probably the problem we're getting into here, is that you can't necessarily compartmentalize the problem to the neck or the head. And that's where these permanency guidelines fall apart. . . . I guess I could have rated two levels and given her a bigger rating, but I thought that it was more judicious to just give her one rating based on the brain."

At trial, Alessi testified: "With a rating, it's kind of either/or; some people will rate both things, rate the neck and rate the brain. I don't think that's fair. I think, in this situation, you rate either/or, so I chose to rate the brain, although I guess I could have rated the cervical spine as the origin; you can go back and forth. Some practitioners will come up with a much higher rating based on the neck and brain."

[4] The court stated in relevant part: "I've had an opportunity to review the deposition transcript . . . . The plaintiff has a claim that she has an injury to her neck as a result of this accident, which has caused her severe headaches, allegedly. The doctor is not opining that she has a cognitive loss to her brain, but rather is indicating that her neck injury is causing headaches, which are obviously in the head. . . . He's clearly an expert. His testimony will clearly assist the jury in understanding what the evidence is and determining the facts necessary to resolve this case."

[5] Our state courts have recognized that the permanency of an injury is a finding that can be determined by jurors without expert testimony. "This principle is based on the recognition by Connecticut courts that jurors are able to evaluate for themselves the testimony of the plaintiff, as well as the nature and duration of the injury, the likelihood of its continuance into the future, and the lack of total recovery by the time of trial. . . . If a jury has the opportunity to appraise the condition of a plaintiff and its probable future consequence, an award of damages for permanent injury and for future pain and suffering is proper." (Citations omitted.) *Parker* v. *Supermarkets General Corp.*, 36 Conn. App. 647, 650–51, 652 A.2d 1047 (1995).

[6] At Alessi's deposition the following examination took place:

"[The Defendant's Counsel]: What guide did you use to come up with your rating?

"[Alessi]: The AMA guidelines. I still use the fifth edition."

[7] At the deposition, Alessi described his reasoning for deviating from the AMA guidelines:

"[The Defendant's Counsel]: Did you actually open the book and refer to a section to come up with this rating or was it just, at this point, based on your experience?

"[Alessi]: I usually do, but I think in this case it may have been based on experience because it's so difficult to rate the brain. If I were rating [the] cervical spine, there are specific charts and tables available."

During the trial, Alessi testified about his reasoning for rating the brain and not the neck or spine:

"[The Plaintiff's Counsel]: Doctor, why did you give her an impairment of the brain?

"[Alessi]: Well, because the headaches were the more specific problem that she was facing, and it seemed like—it did provide the greatest debility overall in terms of impairment and getting in the way of her ability to function.

"[The Plaintiff's Counsel]: But, the headaches were a result of the neck injury.

"[Alessi]: Yes."

[8] See *State* v. *Porter*, supra, 241 Conn. 90 (evidence meeting threshold inquiry of *Porter* may still be excluded for "failure to satisfy other rules of evidence").

[9] The defendant's counsel did, in fact, object to two questions. First, the defendant objected to Alessi's testimony regarding whether the AMA considered a brain impairment equal to a full body impairment. Second, the defendant objected to Alessi's opinion that the neck was also permanently injured. These objections do not challenge the admissibility of the impairment testimony. Rather, the objection to the first question challenged the admissibility of the AMA's classification of brain impairments. The objection to the second question challenged the ability of Alessi to testify as to the neck injury, as his treatment of the plaintiff was limited to the head.

[10] The plaintiff's spouse, as well as her mother and father, testified to the impact that her injuries had on her ability to work and generally enjoy life.

[11] Actuarial tables used at trial indicated that a white female, age twenty-seven, would have an average statistical life expectancy of 54.6 years remaining.

[12] Additionally, in part I of this opinion we held that the trial court did not err when it admitted the challenged impairment testimony. As that evidence was admitted properly at trial, the jury was free to weigh its credibility and consider it in reaching its verdict. Thus, we cannot hold that the court failed to consider errors during posttrial motions when we previously have determined that no error existed.