GAIL THORSEN *v.* DURKIN DEVELOPMENT, LLC, ET AL.
(AC 31454)

DiPentima, C. J., and Bear and Schaller, Js.

---

Argued November 16, 2010—officially released May 31, 2011

*John A. Barbieri*, with whom, on the brief, was *Claudia R. Barbieri*, for the appellants (named defendant et al.).

*Cheryl E. Heffernan*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. The defendants Durkin Development, LLC (Durkin Development), and Durkin Construction, LLC (Durkin Construction),[1] appeal from the

---

[1] Also named as a defendant was Debbieann Durkin, the managing member and principal of Durkin Development and Durkin Construction. Because she has not appealed, we refer in this opinion to Durkin Development and Durkin Construction as the defendants.

judgment of the trial court, rendered after a jury trial, in favor of the plaintiff, Gail Thorsen. On appeal, the defendants argue that (1) the court improperly denied the defendants' challenge of a prospective juror for cause, (2) the award of compensatory damages against Durkin Construction was unreasonable, excessive and not supported by the evidence, (3) the award of punitive damages against each defendant was unreasonable, excessive and not supported by the evidence, (4) the award of attorney's fees against each defendant was unreasonable, excessive and not supported by the evidence, and (5) the court improperly denied the defendants' motions to set aside the verdict and for remittitur.[2] We disagree with the defendants and, accordingly, affirm the judgment of the trial court.

On September 2, 2005, the plaintiff entered into a contract with Durkin Development for the purchase of land and construction of a single-family residence at 29 Hamilton Avenue in Southington. Durkin Construction was the general contractor for the property. The closing took place on November 10, 2005.[3] Commencing in

[2] The defendants also claim that the court improperly denied their motion for articulation, which was filed with the trial court on August 19, 2009, prior to the commencement of this appeal. "Th[e] language of Practice Book § 66-5 makes clear that the motions for articulation under that section may be filed only after the filing of an appeal." (Internal quotation marks omitted.) *Swanson* v. *Groton*, 116 Conn. App. 849, 865, 977 A.2d 738 (2009). In *Swanson*, the plaintiff filed a motion for articulation directly with the trial court prior to filing her appeal. This court stated in that case that "[t]o obtain review by this court, she would had to have filed another motion for articulation, this one pursuant to Practice Book § 66-5, after having filed her appeal. . . . Additionally, she would have had to have filed a motion for review pursuant to Practice Book § 66-7 if the trial court, again, denied the motion for articulation. This she did not do, and, accordingly, we are unable to review her claim." (Citation omitted.) Id., 866. For the same reason, we are unable to review the defendants' claim in the present appeal.

[3] On September 2, 2005, the date of the contract, Durkin Development did not own the subject property. It was owned by Durkin Construction. By corporate resolution dated November 10, 2005, Durkin Construction authorized Debbieann Durkin, the managing member of Durkin Construction, to sell the property. By warranty deed dated November 10, 2005, Durkin Construction deeded the property to Durkin Development.

December, 2005, the plaintiff began complaining of defects in the construction, specifically, with water in the basement. The plaintiff eventually took action to correct the water problem on her own. The plaintiff thereafter commenced the present action against the defendants.

The operative complaint contained four counts. The first count, against Durkin Development, alleged breach of contract based on, inter alia, the failure to construct and deliver the property in the condition represented and provided for in the contract. The second count, against Durkin Development, alleged a violation of the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes § 42-110a et seq. The third count, against Durkin Development, Durkin Construction and Debbieann Durkin, the managing member and principal of Durkin Development and Durkin Construction, alleged fraud and civil conspiracy.[4] The fourth count, against Durkin Construction, alleged a violation of CUTPA. The matter was tried to a jury, which found in favor of the plaintiff on counts one, two and four. With regard to the third count, the jury found in favor of the plaintiff only as to the claims asserted against Durkin Development. The court denied the motions filed by Durkin Development and Durkin Construction to set aside the verdict and for remittitur as to the award of punitive damages and attorney's fees. The defendants then filed the present appeal.

I

The defendants first claim that the court improperly denied their challenge for cause of a prospective juror whom they claim was biased in favor of the plaintiff. We disagree.

---

[4] The jury returned a verdict in favor of Durkin as to count three.

During jury selection, the defendants reported to the court that they had used all of their peremptory challenges and wanted to challenge a certain prospective juror for cause. The basis of this claim was that the prospective juror was the plaintiff in a personal injury action and "seem[ed] very plaintiff oriented." The court questioned the prospective juror and, thereafter, denied the request that she be excused for cause. The defendants argue on appeal that the court did not go far enough in questioning the prospective juror and that the juror's statements were not definite, firm and convincing.

"The determination as to a potential juror's impartiality, in which demeanor plays an important part, is particularly within the province of the trial judge and the trial judge has broad discretion in deciding whether to excuse a juror for cause." *Johnson* v. *New Britain Hospital*, 203 Conn. 570, 584, 525 A.2d 1319 (1987). "In challenging the competency of this juror to sit on the panel, the [defendants] had the burden of raising [their] claim of actual bias from the realm of speculation to the realm of fact. . . . In proving actual juror bias, the party challenging for cause must also show that the juror's state of mind is fixed and settled and not a mere impression." (Citations omitted; internal quotation marks omitted.) Id., 582.

On the basis of our review of the record, we conclude that the court properly determined that the defendants had failed to satisfy their burden of establishing actual bias on the part of the potential juror. In response to questioning from the court, the juror stated that she would consider all of the evidence in the case, would not side with the plaintiff just because she was a plaintiff and agreed that the plaintiff could not be awarded any damages unless the plaintiff proved that the defendants

did something wrong.[5] She further indicated that she would not be uncomfortable sitting on the case and following the court's instructions. We conclude, therefore, that the court did not abuse its discretion in denying the defendants' challenge for cause of the prospective juror.

## II

The defendants next argue that the award of compensatory damages against Durkin Construction was unreasonable and excessive and not supported by the

[5] The court's voir dire of the juror included the following:

"The Court: Okay. And are you comfortable with the idea that unless the plaintiff proves that somehow the defendant[s] did something that was wrong concerning the construction or whatever the claims in the case are, that the plaintiff can't be awarded any money?

"The Witness: Right.

"The Court: I mean, she can't just come in and say whatever she wants to say—

"The Witness: Right.

"The Court:—you'd have to find that the defendant[s] in this case really didn't do what [they were] supposed to do under the contract or whatever—

"The Witness: Right.

"The Court:—in order for the plaintiff to be awarded any money from the jury. That seem fair to you?

"The Witness: Well, yeah, that's the same situation I'm in, too, so.

"The Court: Okay. So, you would be able to follow instructions—

"The Witness: Yeah.

"The Court:—about that?

"The Witness: Uh-hum.

"The Court: And not just award the plaintiff money because, well, she did have water, but we can't really tell if it's the defendants'—

"The Witness: Right.

"The Court:—fault or not?

"The Witness: Right.

"The Court: Okay. That's, you're comfortable with that as well?

"The Witness: Yeah, that's fine.

"The Court: Is there any reason that you think you would be uncomfortable sitting on this jury or not be able to follow the court's instructions?

"The Witness: No, because it's not, I mean if it, like, I told them if it had to do with something with personal injury—

"The Court: That would—

"The Witness:—I really want to stay away from it. But since it has absolutely nothing to do with that—

evidence. Specifically, the defendants contend that the award of $30,221.43 in compensatory damages improperly included upgrades from the original contract. The plaintiff counters that the award of compensatory damages was supported by the evidence.[6]

In reviewing this claim, we note that "the amount of an award [of damages] is a matter peculiarly within the province of the trier of facts. . . . [T]he court should not interfere with the jury's determination except when the verdict is plainly excessive or exorbitant. . . . The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption." (Internal quotation marks omitted.) *Mahon* v. *B.V. Unitron Mfg., Inc.*, 284 Conn. 645, 661–62, 935 A.2d 1004 (2007).

Count four of the plaintiff's complaint alleged a violation of CUTPA and was directed against Durkin Construction. Specifically, this count alleged that Durkin Construction was not a party to the contract between the plaintiff and Durkin Development, and that Durkin Construction's actions in failing to obtain a contract with the plaintiff constituted an unfair trade practice,

"The Court: Okay.

"The Witness:—it doesn't bother me at all."

[6] Citing *Santopietro* v. *New Haven*, 239 Conn. 207, 211, 682 A.2d 106 (1996), the plaintiff contends that because the defendants filed motions to set aside the verdict and for remittitur only as to the award of punitive damages and attorney's fees but not as to the award of compensatory damages, the plain error standard of review should be applied to this claim. We note, however, that the *Santopietro* court explicitly left open the question of whether a motion to set aside the verdict "is essential to full appellate review of a claim of insufficiency of the evidence . . . ." Id., 213 n.9. Here, regardless of which review is afforded by this court, we conclude that the award of compensatory damages was supported by the evidence.

resulting in damages to the plaintiff. This count further alleged violations of the New Home Construction Contractors Act; General Statutes § 20-417a. The jury found in favor of the plaintiff on this count and awarded $30,221.43 in compensatory damages. The defendants do not challenge the finding in favor of the plaintiff as to this count; rather, they claim that in arriving at the damages awarded, the jury improperly included upgrades, improvements and repairs. We disagree.

It is undisputed that the main issue between the parties involved the water seeping into the plaintiff's basement. Both sides presented testimony regarding possible alternatives to remedy the situation. Jeff Durkin, a member of Durkin Development and Durkin Construction, testified that he advised the plaintiff of the defendants' plan to remedy the problem, which involved blocking off the footing drain pipe. He testified that this solution would cost significantly less than the plaintiff's proposed solution and would work better than what the plaintiff proposed to do. The plaintiff eventually hired Marek Brothers Construction Company, Inc. (Marek), to perform excavation work to remedy the problem. This work involved attaching the footing drains to the storm drain. The cost of this work was $11,550.[7]

In addition to the invoice from Marek, the court admitted into evidence several invoices and receipts for work performed and proposals for work to be performed in the future to remedy the problem. These invoices included the cost for a sump pump, grass seed and sprinklers necessary to establish a new lawn, and materials to repair a closet when the racks in it fell from the wall. The defendants did not object to the

---

[7] The initial estimate submitted by Marek was for $9370. This amount subsequently was increased due to extra yards of fill and processed stone for the driveway.

admission of these invoices. The proposals included the cost of the roof repair, repair of the hatchway or Bilco doors, cleaning of the ductwork, removal and replacement of the waste pipe in the basement, and the continued resolution of the water problem in the basement. The defendants did not object to the admission of this evidence. The plaintiff testified that she was seeking, by way of damages, the money that she had spent on the house as well as the money that she continues to spend to repair the problems, and that this was reflected in the estimates and invoices submitted into evidence.

On the basis of our review of the record, we conclude that the award of compensatory damages against Durkin Construction was not plainly excessive or exorbitant and was reasonably supported by the evidence.

### III

The defendants next contend that the award of punitive damages against both of them was not supported by the evidence and was unreasonable and excessive.[8] Specifically, the defendants argue that the punitive damages awarded against them had no relation to the award of compensatory damages[9] and that the punitive damages were awarded to punish them.

"A court may exercise its discretion to award punitive damages to a party who has suffered any ascertainable loss pursuant to CUTPA. See General Statutes § 42-110g (a). In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the

---

[8] The jury awarded punitive damages against Durkin Development on count two (CUTPA) in the amount of $133,000 and count three (fraud) in the amount of $14,000. The jury awarded punitive damages against Durkin Construction on count four (CUTPA) in the amount of $133,000.

[9] As stated in part II of this opinion, the jury awarded $30,221.43 in compensatory damages against Durkin Construction. The jury also awarded $1 in compensatory damages against Durkin Development.

rights of others or an intentional and wanton violation of those rights. . . . Accordingly, when the trial court finds that the defendant has acted recklessly, [a]warding punitive damages and attorney's fees under CUTPA is discretionary . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *Votto* v. *American Car Rental, Inc.*, 273 Conn. 478, 485–86, 871 A.2d 981 (2005).

The court in the present case specifically instructed the jury with regard to the punitive damages that may be awarded under the CUTPA and fraud counts.[10] With regard to CUTPA, the court charged that the amount of punitive damages, if any, was for the jury to determine but that the amount must be reasonable. The defendants did not submit a proposed jury charge regarding punitive damages, nor did they object to the court's charge on punitive damages. During deliberations, the jury inquired whether there were any limits on the amount of punitive damages that may be awarded against the defendants. The court, after consultation with counsel, charged that there were no limits, but that the amount must be reasonable.[11] The defendants

[10] With regard to CUTPA, the court charged as follows: "The plaintiff is entitled to damage for the ascertainable loss that you find she has suffered. In addition to damages to compensate the plaintiff for any loss you find, you may also award punitive damages and attorney's fees to the plaintiff . . . . You can award either, both, or neither. The purpose of punitive damages is not to compensate the plaintiff but to punish the defendant[s] and deter such conduct in the future. You are not required to award punitive damages, but you may award them in addition to damages for the plaintiff's ascertainable loss. If you determine that there was malice or improper purpose or unjustifiable motive or intent or that the defendant[s] acted in bad faith or wantonly, the amount of any punitive damages is for you to determine, but the amount must be reasonable."

With regard to fraud, the court instructed that the measure of damages is limited to attorney's fees.

[11] The court charged as follows: "Thank you, ladies and gentlemen. I have two questions from you, and I prepared in consultation with counsel to answer them. The first question: are there limits for the punitive damages

conceded at oral argument that the jury verdict forms and jury charge were proper and were not being challenged on appeal.[12] "Unless there is evidence to the contrary, the jury is presumed to follow the court's instructions." *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 37, 761 A.2d 1268 (2000). On the basis of our review of the record and under these circumstances, we cannot conclude that the award of punitive damages against the defendants was unreasonable and excessive.[13]

## IV

The defendants next argue that the award of $30,000 in attorney's fees against Durkin Development and

on an LLC, and, if so, what are the limits of Durkin Construction, LLC, and Durkin Development, LLC. And it's signed by your foreperson. The answer is, there are no limits, but the amount must be reasonable, so that's the answer to the first question."

[12] Additionally, no interrogatories were submitted to the jury.

[13] With regard to parts III and IV of this opinion, we note that the jury in this case awarded punitive damages and attorney's fees to the plaintiff. General Statutes § 42-110g (g) provides in relevant part, however, that "[i]n any action brought by a person under this section there shall be a right to a jury trial *except with respect to the award of punitive damages under subsection (a) of this section or the award of costs [and] reasonable attorneys' fees . . . .*" (Emphasis added.) See also *Perkins* v. *Colonial Cemeteries, Inc.*, 53 Conn. App. 646, 648–49, 734 A.2d 1010 (1999) ("[u]nder CUTPA, once there is a finding of liability by the jury, the trial court may then, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper" [internal quotation marks omitted]); *Gill* v. *Petrazzuoli Bros., Inc.*, 10 Conn. App. 22, 35, 521 A.2d 212 (1987) ("[w]e hold, on the basis of the statutory language and legislative history of General Statutes § 42-110g [d], and the policy underlying CUTPA, that the court rather than the jury determines an award of attorney's fees").

This issue was not raised or briefed by the parties on appeal, nor does it appear to have been raised in the trial court. "We long have held that, in the absence of a question relating to subject matter jurisdiction, the Appellate Court may not reach out and decide a case before it on a basis that the parties never have raised or briefed. . . . To do otherwise would deprive the parties of an opportunity to present arguments regarding those issues." (Internal quotation marks omitted.) *Sequenzia* v. *Guerrieri Masonry, Inc.*, 298 Conn. 816, 821, 9 A.3d 322 (2010). "An unmentioned claim is, by definition, inadequately briefed, and one that is generally . . . considered abandoned." (Internal quotation marks omitted.) *State* v. *Saucier*, 283 Conn. 207,

$15,000 in attorney's fees against Durkin Construction based on a CUTPA violation was not supported by the evidence and was unreasonable and excessive. We disagree.

General Statutes § 42-110g (d) provides in relevant part that "[i]n any action brought by a person [pursuant to CUTPA], the court may award . . . costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ." "[A]n award of attorney's fees is not a matter of right. Whether any award is to be made and the amount thereof lie within the discretion of the trial court, which is in the best position to evaluate the particular circumstances of a case." (Internal quotation marks omitted.) *Heller* v. *D. W. Fish Realty Co.*, 93 Conn. App. 727, 734–35, 890 A.2d 113 (2006). "Additionally the amount of attorney's fees that the trial court may award is based on the work reasonably performed by an attorney and not on the amount of recovery." (Internal quotation marks omitted.) *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 795, 720 A.2d 242 (1998).

In the present case, the plaintiff's contingency fee arrangement with her attorney was admitted into evidence without objection. The defendants did not submit a request to charge the jury with regard to attorney's fees, nor did the defendants object when the court charged that the jury could award whatever reasonable amount it determined would fully and fairly compensate the plaintiff's counsel for fees and expenses incurred.[14]

223, 926 A.2d 633 (2007). Under these circumstances, we decline to address this issue as we deem it to be abandoned.

[14] The court charged the jury as follows: "In addition to punitive damages, you may award fees and expenses from the defendant[s] to compensate the plaintiff for the fees and expenses payable to her counsel. You have evidence of the plaintiff's compensation agreement with her lawyer, but you are not bound by that and may award whatever reasonable amount you determine would fully and fairly compensate the plaintiff's counsel for the fees and expenses incurred in representing the plaintiff. I do not believe there's any independent evidence of expenses, only of the attorney's fee."

During deliberations, the jury inquired whether, if it awarded attorney's fees, the plaintiff's attorney would still get a percentage of other money awarded. The court, with the agreement of counsel, charged that any arrangement in that regard was between the plaintiff and her attorney and was not a subject for the court or jury.[15] On the basis of our review of the record, and under these circumstances, we cannot say that the award of attorney's fees to the plaintiff was unreasonable and excessive.[16]

V

The defendants next argue that the court improperly denied their motions to set aside the verdict and for remittitur. As to the motions to set aside, the defendants contend that the verdicts were influenced by partiality and mistake, and that the jury did not fully understand the jury charge or ignored it. As to the motion for remittitur, the defendants rely primarily on their earlier arguments regarding the award of punitive damages and attorney's fees. We decline to review these claims.

On July 16, 2009, following the entry of the verdicts for the plaintiff, each defendant filed a motion to set aside and for remittitur. The plaintiff objected to these motions. On August 5, 2009, the court sustained the

[15] The court charged as follows: "The second question, if we award lawyer fees, does the lawyer still get a percentage of the other awarded money (punitive, question mark, damage-cost, question mark)? And the answer is that if you determine an award of attorney fees, you determine the award of the attorney fees, and any arrangement as to that is between the plaintiff and her attorney and not a subject for the court or the jury. So, you decide on the basis of the evidence that you have and the law that I've given to you, and whatever arrangements the plaintiff and her attorney make as to that are not a subject for you or me. All right. Fair enough? Counsel, further questions, comments?

"[The Defendants' Counsel]: No, Your Honor.

"[The Plaintiff's Counsel]: No, Your Honor."

[16] See footnote 13 of this opinion.

plaintiff's objections and denied the motions. In so ruling, the court did not set forth the basis for its decisions. Although the defendants filed a motion for articulation with the trial court regarding the denial of the motions to set aside and for remittitur prior to appeal, they did not file a motion for articulation pursuant to Practice Book § 66-5. See footnote 2 of this opinion.

"It is well established that [i]t is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record [when] the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter." (Internal quotation marks omitted.) *Zahringer* v. *Zahringer*, 124 Conn. App. 672, 681, 6 A.3d 141 (2010). Because the defendants have failed to provide an adequate record for review, we decline to review the defendants' claim that the court improperly denied their motions to set aside the verdict and for remittitur.

The judgment is affirmed.

In this opinion the other judges concurred.