******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# THEDRESS CAMPBELL *v.* MAURICE PORTER ET AL.
## (AC 43753)

Bright, C. J., and Elgo and Bear, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants, a church and its pastor, P, and the city of Hartford and its police officer, J, in connection with his arrest by J for his alleged trespass at the church. The plaintiff had been a member of the church for several decades, but, after a dispute between the plaintiff and P, church leaders voted to dismiss the plaintiff from the church. Church leadership sent the plaintiff a letter notifying him of his dismissal and informing him that he was no longer allowed on the church premises. After the plaintiff received the letter from the church, he instituted a lawsuit challenging his dismissal. While the lawsuit was pending, the plaintiff attended a funeral at the church. After P called the police, J arrested the plaintiff for criminal trespass in the first degree. That charge was later dismissed. The plaintiff revised his complaint in this action to set forth, inter alia, a claim against J and the city for J falsely arresting him without probable cause in violation of the applicable federal law (42 U.S.C. § 1983), a civil conspiracy claim alleging that all of the defendants had conspired to violate his civil rights in violation of the applicable federal law (42 U.S.C. § 1985 (3)), and a claim of intentional infliction of emotional distress against the church and P. The city and J filed a motion to strike the civil conspiracy claim, and the trial court granted that motion. In their answer and special defenses, the city and J pleaded several special defenses of immunity, including that J was entitled to qualified immunity because his conduct was reasonable under the circumstances. After trial, the jury returned a verdict for the city and J on the § 1983 claim. The jury returned a verdict for the plaintiff on the claim of intentional infliction of emotional distress and awarded him $30,000 in compensatory damages, but found that he was not entitled to punitive damages. The trial court rendered judgment in accordance with the jury's verdict. On the plaintiff's appeal to this court, *held*:

1. The evidence presented at trial was sufficient to support the jury's verdict for the city and J on the § 1983 claim, as the jury reasonably could have concluded that J had either actual or arguable probable cause to arrest the plaintiff for criminal trespass: prior to arresting the plaintiff, J had been told that the plaintiff had been warned numerous times not to return to the church, and the plaintiff admitted to J that he had received the letter telling him that he was banned from the church; moreover, although the plaintiff told J that he had a lawsuit with the church and that he and his family were longtime members, which the plaintiff argued provided J with exculpatory evidence, the jury could have credited J's testimony that the plaintiff never told him that he disputed the validity of his expulsion from the church in the lawsuit, such information would not undermine a reasonable conclusion that probable cause existed to arrest the plaintiff, and this was not a case where, even if J had investigated further, the plaintiff would have been exonerated, as any further investigation would result in the same facts that J already knew; furthermore, although the plaintiff argued that he believed he had a right to be at the church and that the funeral was open to the public, both of which constitute affirmative defenses to criminal trespass, the existence of a possible affirmative defense to a criminal charge is neither inconsistent with nor undermines the existence of probable cause in the absence of plainly exculpatory evidence, and the jury reasonably could have concluded that further investigation by J would not have conclusively established either of the claimed affirmative defenses.

2. The trial court properly granted the motion to strike the civil conspiracy claim filed by the city and J: the plaintiff's revised complaint failed to set forth any facts alleging an agreement of any type, explicit or implicit, between the four defendants, as required to establish a civil conspiracy; moreover, an allegation that one defendant merely took action on the basis of a request of, and false information provided by, another defen-

dant is, without more, insufficient to set forth a claim brought pursuant to § 1985 (3).

3. This court declined to review the plaintiff's claim that the jury erred when it failed to award him punitive damages on his intentional infliction of emotional distress claim despite returning a verdict for him on that count: the plaintiff failed to properly preserve this claim, as he never argued before the trial court that if the jury rendered a verdict for him on his intentional infliction of emotional distress claim, then he was necessarily entitled to an award of punitive damages; moreover, the plaintiff failed to object to, and, in fact, approved of, the verdict form as written and submitted to the jury, which left the question of whether to award punitive damages to the jury's discretion; furthermore, the plaintiff did not object to the trial court's instruction to the jury that it was not required to award punitive damages.

Argued November 30, 2021—officially released May 10, 2022

*Procedural History*

Action to recover damages for, inter alia, intentional infliction of emotional distress, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Hon. A. Susan Peck*, judge trial referee, granted the motion to strike filed by the defendant city of Hartford et al.; thereafter, the matter was tried to the jury before *Noble, J.*; verdict in part for the plaintiff; subsequently, the court, *Noble, J.*, rendered judgment in accordance with the verdict, from which the plaintiff appealed to this court. *Affirmed*.

*Kirk D. Tavtigian, Jr.*, for the appellant (plaintiff).

*Wesley S. Spears*, for the appellees (named defendant et al.).

*David R. Roth*, with whom, on the brief, was *Aaron S. Bayer*, for the appellees (defendant city of Hartford et al.).

*Opinion*

BRIGHT, C. J. The plaintiff, Thedress Campbell, appeals from the judgment of the trial court rendered after a jury verdict in part in favor of the defendants, Maurice Porter, the city of Hartford (city), Officer Omar Jones, and Shiloh Baptist Church (church).[1] On appeal, the plaintiff claims that (1) the jury erred in returning a defendants' verdict on his false arrest claim against Jones and the city, (2) the court erred in striking his civil conspiracy claim against all of the defendants, and (3) the jury erred in not awarding him punitive damages despite returning a plaintiff's verdict on his intentional infliction of emotional distress claim against Porter and the church.[2] We affirm the judgment of the trial court.

The following facts, as reasonably could have been found by the jury, and procedural history are relevant to this appeal. The plaintiff was a decades long member of the church. As a member of the church, he served on the church's board of trustees and as the church's property manager, led Sunday school services, became a deacon, and participated in the church's philanthropic efforts, among other acts of service to the church.

In 2014, the church appointed Porter as its new pastor. Initially, the plaintiff and Porter got along, but their relationship soon soured. Shortly after Porter took over as pastor, he removed the plaintiff from his role as the church's property manager because Porter had concerns about how the plaintiff was carrying out his duties. Thereafter, the plaintiff began questioning the validity of certain relocation expenses that Porter had claimed for his move from South Carolina to Hartford. The plaintiff eventually sent an e-mail about Porter's relocation expenses to another member of the church, and that e-mail was later forwarded to Porter. Porter then held a meeting of the church's deacons, at which he read the plaintiff's e-mail aloud to those in attendance. Porter did not initially reveal who had written the e-mail, but the plaintiff, who was at the meeting, revealed himself as the author after the e-mail was read. One of the deacons then recommended that the plaintiff be removed as a deacon, at which point the plaintiff voluntarily resigned from that post.

After the e-mail incident, the plaintiff's relationship with Porter and the church worsened. Church leadership made repeated efforts to reconcile with the plaintiff, but those efforts were unsuccessful and, eventually, the church leaders made the decision to dismiss the plaintiff from the church. To that end, on February 2, 2016, church leadership sent the plaintiff a letter which stated in relevant part:

"Dear Brother Campbell,

"Please be advised that in accordance with Section 7.3, Dismissal of Members, of the Amended and Restated Constitution and Bylaws of [the church], its leadership

has exercised rights granted to it under this provision and hereby has DISMISSED you from membership of [the church] for: continually disregarding the [c]hurch's authority and for creating contention and strife.

"Accordingly, pursuant to state law concerning trespassing, you are NOT allowed on any premises owned or operated by [the church] and you are not allowed to attend any function or activity held or hosted by [the church]. Any violation of this law will immediately be reported to the appropriate law enforcement authority and the appropriate civil remedy will be sought. You will only be allowed on any premises owned or operated by [the church] or any function or activity held or hosted by [the church] provided you have sought and received written consent to do so. All requests for permission should be made to the church office in writing prior to whatever event you wish to attend and we will respond accordingly. . . ." The letter was signed by Porter and Bradley Jones, the chairman of the deacons.

The letter was sent, in part, at the suggestion of Douglas Antuna, the faith based community service officer for the Hartford Police Department (department). In that capacity, Antuna served as the liaison between the department and the churches that are located in the city. While serving in that role, Antuna became aware of the fraught relationship between the plaintiff and the church, and, after he learned that the church had decided to dismiss the plaintiff as a member, Antuna suggested that the church draft a letter informing the plaintiff of his dismissal and telling him that he was no longer allowed at the church.

The plaintiff received the letter from the church, either by mail or hand delivery, but believed that it was invalid because he had not been dismissed in accordance with the church's bylaws. According to the plaintiff's understanding of the bylaws, the entire congregation was required to vote on the dismissal of a member, and church leadership alone did not have the power to dismiss a member, as it had attempted to do with the letter. The plaintiff then instituted a lawsuit against Porter and the church in an attempt to prevent the church from dismissing him.[3]

While the plaintiff's lawsuit against Porter and the church was pending, and even though he disputed the church's authority to dismiss him as a member without a vote by the full congregation, the plaintiff stayed away from the church. This decision was driven in part by the plaintiff's concern that "even though I knew I was right, based on the church bylaws and the decisions that we had received, I didn't [want to] take a chance on going into the church for service and having a policeman come into the church . . . and escort me out of the church . . . ." On July 1, 2016, however, before there had been any resolution in his lawsuit challenging his dismissal, the plaintiff attended a friend's funeral at the

church. While the plaintiff was sitting in the church sanctuary and waiting for the funeral to begin, he was approached three separate times by different church leaders, each of whom reminded him that he was not allowed at the church without permission and told him that if he wanted to stay at the church for the funeral, he first needed to ask Porter for such permission. The plaintiff repeatedly declined to ask Porter for permission to attend the funeral because he believed that he had a right to be at the church, given his view that the letter dismissing him was invalid. The church leaders then told the plaintiff that if he was not going to ask for Porter's permission, he needed to leave the premises. After the plaintiff ignored those requests, Andre McGuire, the church's assistant pastor, informed him that if he remained at the church without permission, the police would be called. Despite that warning, the plaintiff still refused to leave.

Porter then called the police. He first called Antuna, but, because he was off duty at the time, Antuna told Porter to call the department, which he did. The department then dispatched Jones to the church. While Jones was en route, his supervisor told him that the church had been coordinating with Antuna regarding the plaintiff and that he should call Antuna for more information. Jones then called Antuna, who provided him with additional information about the conflict between the plaintiff and the church. Specifically, Antuna told Jones that the church had voted to dismiss the plaintiff as a member of the church and had given the plaintiff a letter telling him that he had been dismissed from the church and was no longer allowed there.

After he arrived at the scene, Jones spoke with McGuire,[4] who also explained that the church had voted to dismiss the plaintiff as a member and had sent the plaintiff a letter telling him that he had been dismissed and was no longer allowed at the church. McGuire further told Jones that church officials had repeatedly asked the plaintiff to leave the property but that he had ignored those requests. On the basis of this information, Jones determined that the situation constituted a "criminal trespass call."

Jones then asked the plaintiff to step outside,[5] which he did. He and the plaintiff had a brief conversation, during which Jones told the plaintiff that he had heard that the plaintiff had received a letter informing him that he was not allowed at the church. The plaintiff admitted to receiving the letter but told Jones that there was a pending legal case between him and the church.[6] The plaintiff also told Jones that he and his family were longtime members of the church. The plaintiff did, however, concede that several church officials had told him that day that if he did not get Porter's permission to be at the funeral then he could not be at the church and needed to leave. During this conversation, the plain-

tiff did not tell Jones that he disputed whether the church had the authority to dismiss him or provide any specific details about his lawsuit. Jones also did not ask for such information.

Jones then arrested the plaintiff for criminal trespass. A different officer arrived at the church and transported the plaintiff to the police station, where he was booked and released on his own recognizance. On September 2, 2016, the plaintiff filed a motion to dismiss the criminal trespassing charge, and that motion to dismiss was granted by the court on January 13, 2017.

On July 18, 2017, the plaintiff instituted the underlying action against the four defendants and the Hartford Police Department by way of a thirteen count complaint.[7] In October, 2017, the plaintiff filed a revised complaint that included two additional counts, bringing the total number to fifteen counts. The second count of the revised complaint alleged that the defendants had conspired to deprive the plaintiff of his civil rights in violation of 42 U.S.C. § 1985 (3).[8] The city and Jones moved to strike that count, arguing that the plaintiff had failed to allege sufficient facts to establish the existence of an agreement between the defendants regarding their intent to harm the plaintiff. The court, *Hon. A. Susan Peck*, judge trial referee, granted the motion to strike. The city and Jones then filed an answer and special defenses to the plaintiff's revised complaint. In addition to denying the plaintiff's allegations that they had engaged in any wrongful conduct, the city and Jones pleaded several special defenses of immunity, including that Jones was entitled to qualified immunity because his conduct "was reasonable under the circumstances."

Thereafter, the case went to a jury trial on three counts: false arrest, in violation of 42 U.S.C. § 1983[9] (count one) as to Jones and the city, and intentional infliction of emotional distress (count eleven) and slander per se (count fifteen) as to Porter and the church.[10] After a four day trial, the jury found for the city and Jones on the § 1983 claim. The jury also found for Porter and the church on the slander per se claim. On the intentional infliction of emotional distress claim, however, the jury found for the plaintiff and awarded him $30,000 in compensatory damages, but found that the plaintiff was not entitled to punitive damages because Porter and the church had not acted in reckless disregard of the plaintiff's rights. The court, *Noble, J.*, accepted the jury's verdict. Although Porter and the church filed motions to set aside the verdict and for a new trial, which the court denied, the plaintiff filed no posttrial motions challenging the jury's verdict. This appeal followed.[11] Additional facts and procedural history will be set forth below as necessary.

I

The plaintiff claims that the jury erred by not

returning a plaintiff's verdict on his § 1983 claim. Specifically, the plaintiff argues that there was insufficient evidence for the jury to have reasonably concluded that Jones had probable cause to arrest him. We are not persuaded.

We first address whether this claim was properly preserved for appellate review. Jones and the city argue that this court cannot consider the plaintiff's sufficiency of the evidence claim because the plaintiff never challenged the jury's verdict at trial through a motion for a directed verdict or any postverdict motions at all and, thus, the claim is unpreserved and unreviewable. Jones and the city further argue that we should not apply plain error review to this unpreserved claim because the plaintiff never requested such review in his initial brief.

Generally speaking, this court "shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial." Practice Book § 60-5. Both this court and our Supreme Court, however, have left open the question of whether a party in a civil case must file a motion to set aside the verdict in order to secure full appellate review of a sufficiency of the evidence claim. See *Thorsen* v. *Durkin Development, LLC*, 129 Conn. App. 68, 74 n.6, 20 A.3d 707 (2011) ("[w]e note . . . that the *Santopietro* [v. *New Haven*, 239 Conn. 207, 213 n.9, 682 A.2d 106 (1996)] court explicitly left open the question of whether a motion to set aside the verdict is essential to full appellate review of a claim of insufficiency of the evidence" (internal quotation marks omitted)); see also *Santopietro* v. *New Haven*, supra, 213 n.9. We need not resolve this question in the present case because we conclude that the plaintiff's claim fails on the merits. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 158 n.28, 84 A.3d 840 (2014) ("[r]eviewing an unpreserved claim when the party that raised the claim cannot prevail is appropriate because it cannot prejudice the opposing party and such review presumably would provide the party who failed to properly preserve the claim with a sense of finality that the party would not have if the court declined to review the claim").

We begin with the applicable standard of review and principles of law that guide our analysis. "A party challenging the validity of the jury's verdict on grounds that there was insufficient evidence to support such a result carries a difficult burden. In reviewing the soundness of a jury's verdict, we construe the evidence in the light most favorable to sustaining the verdict. . . . We do not ask whether we would have reached the same result. [R]ather, we must determine . . . whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . . If the jury could reasonably have reached its conclusion, the verdict must stand." (Internal quotation marks omitted.)

*Wager* v. *Moore*, 193 Conn. App. 608, 616, 220 A.3d 48 (2019); see also *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 645, 904 A.2d 149 (2006) ("[i]t is not the function of this court to sit as the seventh juror when we review the sufficiency of the evidence" (internal quotation marks omitted)).

The plaintiff's § 1983 claim was based on his allegation that Jones falsely arrested him for criminal trespass in the first degree without probable cause. False arrest "is the unlawful restraint by one person of the physical liberty of another." (Internal quotation marks omitted.) *Outlaw* v. *Meriden*, 43 Conn. App. 387, 392, 682 A.2d 1112, cert. denied, 239 Conn. 946, 686 A.2d 122 (1996). To prevail on a claim of false arrest, the plaintiff must establish that the arrest was made without probable cause. See *Beinhorn* v. *Saraceno*, 23 Conn. App. 487, 491, 582 A.2d 208 (1990), cert. denied, 217 Conn. 809, 585 A.2d 1233 (1991). "Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff." *Escalera* v. *Lunn*, 361 F.3d 737, 743 (2d Cir. 2004).

"Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . It is a flexible common sense standard that does not require the police officer's belief to be correct or more likely true than false. . . . Probable cause for an arrest is based on the objective facts available to the officer at the time of arrest, not on the officer's subjective state of mind. . . . [W]hile probable cause requires more than mere suspicion . . . the line between mere suspicion and probable cause necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances. . . . The existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence. . . . Indeed, proof of probable cause requires less than proof by a preponderance of the evidence." (Citations omitted; internal quotation marks omitted.) *Washington* v. *Blackmore*, 119 Conn. App. 218, 221–22, 986 A.2d 356, cert. denied, 296 Conn. 903, 991 A.2d 1104 (2010). "The determination of whether probable cause exists . . . is made pursuant to a totality of circumstances test." (Internal quotation marks omitted.) *State* v. *Days*, 89 Conn. App. 789, 803, 875 A.2d 59, cert. denied, 275 Conn. 909, 882 A.2d 677 (2005).

Moreover, when, as here, the defense of qualified immunity has been asserted, "the defending officer need only show arguable probable cause. . . . This is because at its heart, [t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police

conduct. . . . Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause . . . and in those situations courts will not hold that they have violated the [c]onstitution. . . . Therefore, in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity." (Citations omitted; internal quotation marks omitted.) *Caldarola* v. *Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002); see also *Weyel* v. *Catania*, 52 Conn. App. 292, 296, 728 A.2d 512 ("[t]he defense of qualified immunity shields government officials from civil liability if . . . it was objectively reasonable for the official to believe that the conduct did not violate such rights" (internal quotation marks omitted)), cert. denied, 248 Conn. 922, 733 A.2d 846 (1999).

Jones arrested the plaintiff for criminal trespass in the first degree. General Statutes § 53a-107 (a) provides in relevant part that "[a] person is guilty of criminal trespass in the first degree when: (1) Knowing that such person is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person . . . ."

We now turn to the evidence presented to the jury regarding whether probable cause existed for Jones to arrest the plaintiff. Jones and the city rely on the following evidence. Before arriving at the church, Jones was told by Antuna that the church had given the plaintiff a letter telling him that he had been dismissed from the church and was no longer allowed on church property. McGuire reiterated this same information to Jones after he arrived at the church. McGuire also informed Jones that the plaintiff had been verbally warned numerous times, prior to Jones' arrival that day, not to return to the church. Further, when Jones spoke with the plaintiff before arresting him, the plaintiff admitted to receiving the letter telling him that he was banned from the church. The plaintiff also admitted to Jones that several church officials had told him that he needed to leave the premises if he was not going to ask Porter for permission to attend the funeral. Jones and the city argue that, based on this evidence, it was reasonable for Jones to believe that the plaintiff knew that he was not allowed at the church and that he had failed to obey repeated requests not to return from those with authority over the church premises. See General Statutes § 53a-107 (a) (1). Accordingly, there was sufficient evidence from which the jury reasonably could have concluded that Jones had either actual or arguable probable cause to arrest the plaintiff.

In response, the plaintiff argues that the evidence relied on by Jones and the city was insufficient evidence to support the jury's finding that probable cause existed

for his arrest because the plaintiff told Jones that he had a right to be at the church, given (1) the pending lawsuit between him and the church, and (2) the fact that he and his family were longtime members. According to the plaintiff, this information provided Jones with possible exculpatory evidence and he was therefore required to investigate the plaintiff's version of events before arresting him for trespass. Consequently, because Jones failed to do this additional investigating, which would have established that the plaintiff did not know that he was not allowed at the church, there could not have been probable cause for him to arrest the plaintiff. On the basis of our review of the record, and given our standard of review, we conclude that the plaintiff's claim fails.

First, the jury was not required to infer that because the plaintiff had a lawsuit with the church that meant that he was challenging his expulsion from the church. In fact, Jones testified that the plaintiff never told him that he disputed the validity of his expulsion from the church. It was for the jury to decide whether to credit Jones' testimony on this issue. See *Micalizzi* v. *Stewart*, 181 Conn. App. 671, 691, 188 A.3d 159 (2018) ("[i]t is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses" (internal quotation marks omitted)). Furthermore, the fact that the plaintiff and his family had been longtime members of the church did not require that the jury infer that the plaintiff still must be welcome there. The jury was free to accept the evidence it heard that the plaintiff, although having been a longtime member, had been expelled and told that he was no longer welcome at the church.

Second, even if Jones had been told or could have inferred that the plaintiff was challenging his expulsion, such information would not undermine a reasonable conclusion that probable cause existed to arrest the plaintiff. Police are often confronted with conflicting information, and an officer's decision to rely on information that is disputed does not mean that there is no probable cause for the arrest. For example, in *Curley* v. *Suffern*, 268 F.3d 65, 68–70 (2d Cir. 2001), the plaintiff brought a § 1983 claim for false arrest against the defendant village and several officers after he was arrested following a barroom brawl at Mugg's Pub, an establishment in which he was a part owner. When the defendant officers arrived at Mugg's Pub, they were given two different stories about the plaintiff's participation in the brawl. Id., 69. The plaintiff told the officers that he was trying to break up the fight when he accidentally hit the victim, but the victim told the officers that the plaintiff had "punched him in the arm and thrown an ashtray at him." Id. Despite these two different versions of events, the police arrested the plaintiff and charged him with assault, resisting arrest, obstructing governmental administration, and disorderly conduct. Id., 68. After

the assault charge was dismissed, the plaintiff's criminal case went to trial where he was acquitted by the jury on the remaining counts. Id. He then sued the village and the officers who arrested him for false arrest in violation of his civil rights by arresting him without probable cause. The United States District Court for the Southern District of New York granted a motion for summary judgment in favor of the defendants. Id. On appeal, the United States Court of Appeals for the Second Circuit held that there was sufficient probable cause for the plaintiff's arrest, even in light of the conflicting factual accounts. Id., 70. This was so because probable cause for an arrest exists even when an officer is presented with different stories from the arrestee and the alleged victim. Id. Thus, an arresting officer is not required to disprove an arrestee's version of events before arresting him. Id. The court further held that probable cause existed despite the officer's failure to conduct a more thorough investigation into the plaintiff's story, because "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." (Internal quotation marks omitted.) Id.

In the present case, like in *Curley*, neither the plaintiff's version of events nor Jones' failure to investigate the plaintiff's story negates the fact that Jones had probable cause to arrest the plaintiff based on what Antuna, McGuire, and the plaintiff himself told Jones regarding whether the plaintiff was allowed at the church. See id.; see also *Martinez* v. *Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("[P]olice officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed. . . . They are also entitled to rely on the allegations of fellow police officers." (Citation omitted.)). Further, "[i]t would be unreasonable and impractical to require that every innocent explanation for activity that suggests criminal behavior be proved wrong, or even contradicted, before an arrest warrant could be issued with impunity. . . . It is up to the factfinder to determine whether [an arrestee's] story holds water, not the arresting officer." (Internal quotation marks omitted.) *Dubinsky* v. *Black*, 185 Conn. App. 53, 68, 196 A.3d 870 (2018).

The plaintiff is correct that officers may not wholly ignore information that they receive from suspects and that probable cause will not exist when minimal further investigation would have exonerated the suspect. See *Kuehl* v. *Burtis*, 173 F.3d 646, 650–51 (8th Cir. 1999). That, however, is not the case here, where the jury was presented with evidence from several witnesses, including the plaintiff, that Jones was repeatedly told that the plaintiff (1) was not supposed to be at the church unless he had prior permission from Porter that he refused to seek, (2) knew that he was not otherwise

supposed to be there, and (3) had ignored orders by church officials to leave because he did not otherwise have permission to be there. See id., 650 (weight of all evidence must be analyzed when determining if probable cause exists). Furthermore, this is not a case where, had Jones investigated further, the plaintiff would have been exonerated. Instead, any further investigation by Jones would have resulted in the same facts that he already knew, namely, that the church had purported to dismiss the plaintiff as a member and had banned him from church property, and that the plaintiff was aware of his banishment but disagreed with it. See id. ("[a]n officer need not conduct a 'mini-trial' before making an arrest"). Therefore, the fact that the plaintiff provided Jones with a different version of the facts and his rights than that which had been conveyed to him by Antuna and McGuire does not necessitate a conclusion that the evidence was insufficient to support the jury's finding that probable cause existed for his arrest.

Finally, we are not persuaded by the plaintiff's argument that it was unreasonable for the jury to conclude that Jones had probable cause to arrest him because (1) the plaintiff believed that he had a right to be at the church and (2) the funeral was open to the public. Both of these factual contentions constitute affirmative defenses to criminal trespass. See General Statutes § 53a-110 ("[i]t shall be an affirmative defense to prosecution for criminal trespass that . . . (2) the premises, at the time of the entry or remaining, were open to the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises; or (3) the actor reasonably believed that . . . he was licensed to [enter or remain in the premises]"). The existence of a possible affirmative defense to a criminal charge is neither inconsistent with nor undermines the existence of probable cause, in the absence of plainly exculpatory evidence, for an arrest on that charge. The United States Court of Appeals for the Second Circuit has recently explained: "To be sure, we have held that an 'officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause,' *Panetta* [v. *Crowley*, 460 F.3d 388, 396 (2d Cir. 2006)], as '[i]t is up to the factfinder to determine whether a defendant's story holds water, not the arresting officer,' *Krause* [v. *Bennett*, 887 F.2d 362, 372 (2d Cir. 1989)]. But we have also consistently held . . . that 'an officer may not disregard plainly exculpatory evidence.' *Panetta* [v. *Crowley*, supra], 395." *Washington* v. *Napolitano*, 29 F.4th 93, 107 (2d Cir. 2022); see also *Painter* v. *Robertson*, 185 F.3d 557, 571 n.21, 572 (6th Cir. 1999). In *Painter*, the United States Court of Appeals for the Sixth Circuit discussed when alleged affirmative defenses should play a role in the probable cause determination, stating: "[W]here a reasonable police officer would conclusively know that an [arrestee's] behavior is protected by a legally cognizable affir-

mative defense, that officer lacks a legal foundation to arrest that person for that behavior. . . . In all other cases, the merits of an alleged affirmative defense should be assessed by prosecutors and judges, not policemen." (Citation omitted.) *Painter* v. *Robertson*, supra, 571 n.21. In the present case, the jury reasonably could have concluded that further investigation by Jones would not have conclusively established either of the claimed special defenses to a charge of criminal trespass.

In sum, on the basis of the evidence introduced at trial, the jury reasonably could have concluded that Jones had either actual or arguable probable cause to arrest the plaintiff for criminal trespass. Accordingly, the evidence was sufficient to support the jury's verdict for the city and Jones on the § 1983 claim.

## II

The plaintiff next claims that the court erred in striking the civil conspiracy count in his revised complaint.[12] We are not persuaded.

We first set forth our standard of review and the applicable law. "The standard of review in an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citation omitted; internal quotation marks omitted.) *Donar* v. *King Associates, Inc.*, 67 Conn. App. 346, 349, 786 A.2d 1256 (2001).

In the second count of his revised complaint, the plaintiff alleged that all of the defendants conspired, in violation of 42 U.S.C. § 1985 (3), to violate his civil rights. As for the underlying facts supporting his claim, the plaintiff incorporated into the second count the factual allegations he pleaded in his first count alleging his § 1983 claim for false arrest. The plaintiff alleged, relevant to his conspiracy claim, that the church and Porter "falsely informed the [Hartford Police Department] that the plaintiff was trespassing and sought [his] removal from the church and his arrest and criminal prosecution." The plaintiff further alleged that Jones "[i]n response to [the church and Porter's] request . . . [and] without undertaking any investigation . . . arrested the plaintiff . . . ." The city and Jones moved to strike the § 1985 (3) count because the complaint

failed to allege facts showing a conspiratorial purpose among the defendants. The court agreed, holding that the plaintiff failed "to set forth specific facts alleging an 'agreement between the [defendants] to inflict a wrong against or injury upon another . . . .' "

On appeal, the plaintiff argues that the revised complaint sufficiently alleged his § 1985 (3) claim because it "explicitly alleged and necessarily implied [facts] . . . that the defendants maliciously conspired" to violate the plaintiff's civil rights. He also argues that the complaint alleged acts taken in furtherance of the conspiracy in that Porter and the church were "working together" with Jones and the city as evidenced by Jones "simply accepting false information without doing any investigation . . . ." We are not persuaded.

"In order to state a conspiracy claim under 42 U.S.C. § 1985 (3), a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. . . . A § 1985 (3) conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." (Citation omitted; internal quotation marks omitted.) *Cine SK8, Inc.* v. *Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007). Further, to maintain an action for civil conspiracy, "the plaintiff must provide some factual basis supporting a meeting of the minds, such that [the] defendants entered into an agreement, express or tacit, to achieve the unlawful end." (Internal quotation marks omitted.) *Chen* v. *Zhao*, 799 Fed. Appx. 16, 19 (2d Cir. 2020).

The plaintiff's complaint, even when read broadly, wholly fails to set forth any facts that allege a conspiratorial agreement between the four defendants. With regard to the specific actions that the defendants allegedly took in concert, the complaint states only that Porter and the church falsely reported that the plaintiff was trespassing and that, "[i]n response," Jones arrested the plaintiff without conducting any investigation. These allegations, however, make no mention of any *agreement* between the defendants to inflict harm or injury upon the plaintiff, as is required to establish a civil conspiracy. See *Chen* v. *Zhao*, supra, 799 Fed. Appx. 19. In fact, the word "agreement" is not mentioned once in the entire complaint and there are also no facts alleged that would support the conclusion that an agreement of any type, explicit or implicit, existed between the four defendants. An allegation that one defendant merely took action based on a request of, and false information provided by, another defendant is, without more, insufficient to set forth a § 1985 (3) claim that

the defendants had reached an agreement to engage in illegal conduct. Accordingly, because the facts alleged in the complaint do not sufficiently support an action for a § 1985 (3) civil conspiracy, the court did not err in striking that claim.

### III

Finally, the plaintiff claims that the jury erred when it failed to award him punitive damages on his intentional infliction of emotional distress claim, despite returning a verdict for him on that claim. Specifically, the plaintiff argues that because the jury found Porter and the church liable for the intentional infliction of emotional distress, the jury must have also determined that Porter and the church had engaged in outrageous conduct and, thus, the plaintiff was entitled to punitive damages. We conclude that this claim was not properly preserved and, therefore, decline to review it.

We begin by setting forth the legal principles relevant to our determination of whether a claim properly was preserved for appellate review. "It is well settled that [o]ur case law and rules of practice generally limit [an appellate] court's review to issues that are distinctly raised at trial. . . . [O]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party. . . . [See] Practice Book § 60-5 ('court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial'). [T]he determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court [and the opposing party] on reasonable notice of that very same claim." (Citation omitted; internal quotation marks omitted.) *Alpha Beta Capital Partners*, *L.P.* v. *Pursuit Investment Management, LLC*, 193 Conn. App. 381, 454–55, 219 A.3d 801 (2019), cert. denied, 334 Conn. 911, 221 A.3d 446 (2020), and cert. denied, 334 Conn. 911, 221 A.3d 446 (2020).

The following additional procedural history is relevant to this claim. Prior to the start of jury deliberations, the court and all of the parties agreed to submit a single verdict form to the jury. With regard to punitive damages, the verdict form asked: "Do you find that [the] plaintiff proved that [the] defendants acted in reckless disregard of [the] plaintiff's rights and therefore that [the] plaintiff is entitled to punitive damages?" The plaintiff never argued before the court that if the jury returned a verdict for the plaintiff on his intentional

infliction of emotional distress claim, he was necessarily entitled to an award of punitive damages. Nor did the plaintiff request that the question of whether to award punitive damages be left to the court, if the jury returned a verdict for the plaintiff. Instead, with the plaintiff's agreement, the question of whether to award punitive damages on that claim was left to the jury's discretion.[13]

The plaintiff's counsel conceded at oral argument before this court that he had reviewed and approved the verdict form before it was submitted to the jury. He further conceded at oral argument that he never objected to the verdict form as drafted. He also never requested that the form be changed to say that if the jury found for the plaintiff on the intentional infliction of emotional distress claim then it was required to award him punitive damages. Finally, the plaintiff did not object during the trial when the court instructed the jury: "The law does not require you to award punitive damages. It is instead a matter for your sound discretion."

Given the plaintiff's failure to challenge in the trial court the verdict form or jury instructions, and, in fact, his agreement with the form as written and submitted to the jury, we conclude that the plaintiff's challenge on appeal to the jury's verdict regarding punitive damages was not preserved. Accordingly, we decline to review this claim. See Practice Book § 60-5.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In his initial complaint, the plaintiff also named the Hartford Police Department (department) as a defendant. The plaintiff, however, withdrew his action against the department before trial. Accordingly, the department is not participating in this appeal, and all references to the defendants are to Porter, the city, Jones and the church.

[2] Porter and the church filed a motion to dismiss the plaintiff's appeal on the basis of untimeliness, lack of preservation, and because the plaintiff's notice of intent to appeal, filed after trial but before the court ruled on posttrial motions, referred to Jones and the city only, and did not include the church and Porter. The plaintiff filed an objection and argued therein that Porter and the church's motion to dismiss was untimely. This court denied the motion to dismiss.

[3] More specifically, on April 26, 2016, the plaintiff filed a four count complaint against Porter and the church, alleging violations of his constitutional rights to free speech and freedom of religion, slander, intentional infliction of emotional distress, and negligent infliction of emotional distress. The plaintiff requested that an injunction be issued to prevent the church from dismissing him and also sought money damages. Porter and the church later filed an answer to the plaintiff's complaint. They also filed a counterclaim against the plaintiff, alleging counts of defamation, libel per se, intentional infliction of emotional distress, and negligent infliction of emotional distress.

In July, 2016, the court held an evidentiary hearing in the matter on the plaintiff's request for injunctive relief. During the hearing, the court raised, sua sponte, the issue of whether it had subject matter jurisdiction to resolve that request given that the first amendment to the United States constitution generally prohibits state involvement in the internal doctrinal matters of religious organizations. The court heard argument from the parties on that issue in August, 2016. Then, in December, 2016, the court issued a memorandum of decision wherein it determined that it had subject matter jurisdiction to resolve the plaintiff's claim for an injunction. In that same decision, the court agreed with the plaintiff that, under the church's bylaws, church officials alone did not have the authority to dismiss members. Instead, the

church's membership as a whole was the only body with such authority. The court, however, also concluded that the church had not yet had an opportunity to present evidence on whether a proper vote to expel the plaintiff had occurred. Given that, in March, 2017, the court held a second evidentiary hearing, at which the church conceded that its original dismissal of the plaintiff was not "an act expressly within the authority of" church leadership. By then, though, the church had held a formal meeting during which the congregation as a whole voted to dismiss the plaintiff from the church. On April 3, 2017, the court issued a second memorandum of decision, in which it concluded that the congregation's vote to dismiss the plaintiff "was a valid expression of the corporate body of the church." Accordingly, the court denied the plaintiff's request for injunctive relief. The plaintiff appealed that judgment to this court, and we dismissed the appeal for lack of a final judgment.

The plaintiff's nonconstitutional counts remained viable after the court's April 3, 2017 decision, and the plaintiff continued to litigate those claims. On January 28, 2019, after a bench trial, the court rejected the plaintiff's remaining claims. The court then rendered judgment for Porter on his negligent infliction of emotional distress counterclaim and awarded him $15,000 in damages. The plaintiff appealed that judgment to this court, and we affirmed. *Campbell* v. *Shiloh Baptist Church*, 201 Conn. App. 902, 239 A.3d 387 (2020).

[4] Jones testified at trial that he talked with Porter at the church. Porter, however, testified that he never spoke to Jones and that it was instead McGuire that Jones spoke with.

[5] Jones testified at trial that he asked an usher to direct the plaintiff to go into the foyer of the church, and that, from there, Jones asked the plaintiff to step outside. The plaintiff, however, testified that Jones came up to him while he was sitting in the sanctuary, tapped him on the shoulder, and ordered him to go outside.

[6] See footnote 3 of this opinion.

[7] As noted in footnote 1 of this opinion, the plaintiff withdrew his action against the department before trial.

[8] Title 42 of the United States Code, § 1985 (3), provides in relevant part: "If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

[9] Title 42 of the United States Code, § 1983, provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . . ."

[10] The remaining counts were dispensed with in various ways. In response to a request to revise that was filed by the city and Jones, the plaintiff submitted a revised complaint that deleted count ten. The plaintiff later withdrew counts three, four, five, six, seven, eight, nine, twelve, and fourteen. As to count thirteen, the parties stipulated that the city was liable to indemnify Jones for any damages awarded to the plaintiff for which he would be responsible.

[11] Although Porter and the church never appealed or cross appealed from the judgment in favor of the plaintiff on the intentional infliction of emotional distress claim, they did file preliminary papers pursuant to Practice Book § 63-4 in this appeal, suggesting that they intended to pursue a cross appeal.

In response, the plaintiff filed a motion to dismiss any possible cross appeal as untimely. This court ordered that it was unnecessary to rule on the plaintiff's motion because Porter and the church never actually filed a cross appeal. Thereafter, Porter and the church took no further action to pursue a cross appeal.

[12] For the sake of clarity and ease of discussion, we have reordered the claims as they are set forth in the plaintiff's brief.

[13] We note that this is consistent with Connecticut law. See *Kenny* v. *Civil Service Commission*, 197 Conn. 270, 277, 496 A.2d 956 (1985) ("[t]he extent to which exemplary damages are to be awarded ordinarily rests in the discretion of the trier of the facts" (internal quotation marks omitted)).

———————————————